## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SUNOPTA, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. |
| | ) _____ |
| BRYAN MANDEL; ORANGE COUNTY | ) |
| CITRUS HOLDINGS GROUP, LLC; and | ) |
| NATIONAL PRIVATE LABEL, LLC, | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT

SunOpta, Inc. ("SunOpta") for its Complaint against Defendants Bryan Mandel ("Mandel"), Orange County Citrus Holdings Group, LLC ("OC Citrus"), and National Private Label, LLC ("NPL") states:

## NATURE OF THE ACTION

1. SunOpta paid over $13 million, and committed to earn-out payments if all conditions precedent were met, to purchase Mandel's beverage company. SunOpta also hired Mandel as a Vice President, giving Mandel access to SunOpta's confidential information and business strategies relating to SunOpta's beverage lines. In return, Mandel agreed in both the Unit Purchase Agreement and his Employment Agreement that, among other things, he would maintain the confidentiality of SunOpta information and not compete with SunOpta or solicit SunOpta customers for a certain period of time.

2. Recently, SunOpta discovered that, despite his contractual promises, Mandel launched NPL, a beverage business that directly competes with SunOpta. Mandel's conduct

constitutes a breach of the agreements with SunOpta. It also negates any earn-out obligations that may be owed under the Unit Purchase Agreement. NPL's conduct constitutes tortious interference with those agreements. SunOpta brings this action to put a stop to Defendants' misconduct and recoup the damages that it has suffered.

## THE PARTIES

3. SunOpta, Inc., is a Canadian corporation with its principal place of business at 2233 Argentia Drive, Suite 401 Mississauga, Ontario L5N 2X7, Canada.

4. Upon information and belief, Defendant Bryan Mandel is an individual who is a citizen of the state of California and resides in Aliso Viejo, California.

5. Upon information and belief, Defendant Orange County Citrus Holdings Group, LLC is a Delaware limited liability company with its principal place of business at 15 Pasadena, Irvine, CA 92602. Upon information and belief, Mandel is the sole member of OC Citrus.

6. Upon information and belief, Defendant National Private Label, LLC, is a Delaware limited liability company with its principal place of business at 3791 Toland Avenue, Los Alamitos, California 90720.

## JURISDICTION AND VENUE

7. This Court has diversity jurisdiction under 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, exclusive of interest and costs, and complete diversity of citizenship exists between plaintiff and defendants because plaintiff is a Canadian corporation and defendants are citizens of Delaware and California.

8. Venue is proper in this District because NPL and OC Citrus are residents of Delaware and Mandel consented to the jurisdiction of Delaware courts.

# FACTS

**A.     SunOpta's Business**

9.     SunOpta is a global company that operates businesses focused on a healthy products portfolio that promotes sustainable well-being. SunOpta is focused on sourcing non-genetically modified ("non-GMO") and organic ingredients and manufacturing healthy food and beverage products. SunOpta operates an integrated "field-to-table" business model leveraging its global ingredient sourcing platform to process and market non-GMO and organic ingredients for retailers, food manufacturers and foodservice operators. SunOpta also manufactures packaged products focused on the high-growth healthy beverages, healthy fruit and healthy snacks categories for its retail, foodservice and branded food customers.

10.     SunOpta is a market leader in non-dairy organic aseptic beverages, premium refrigerated private label orange juice, individually-quick-frozen organic fruit, healthy premium fruit snacks, and the global sourcing and supply of non-GMO and organic raw materials and ingredients. The beverages that SunOpta manufactures include a full line of aseptic beverages, comprising non-dairy beverages (including almond, soy, coconut, oat, hemp, rice and others), broths, teas and nutritional beverages. SunOpta also offers refrigerated premium juices, shelf-stable juices, and enhanced water products, or "e-waters."

11.     SunOpta has spent decades growing into a leading organic food company. By investing a significant amount of time and resources, SunOpta has developed proprietary recipes and processes for manufacturing premium juice and e-waters. E-water is a category of beverages that includes several different types of waters that boost nutrition, hydration, bone health and energy levels. SunOpta e-waters include deionized, sparkling, flavored, and electrolyte-fortified waters.

12. SunOpta's unique formulas and processes allow SunOpta to create products with better taste, texture and nutritional makeup. SunOpta has invested significantly in sourcing its e-water and developing proprietary processes to deionize and add electrolytes. SunOpta's proprietary recipes, processes, and sources, therefore, provide a competitive advantage.

**B.      SunOpta's Purchases Citrusource and Hires Mandel**

13. As part of SunOpta's development strategy, SunOpta has, from time to time, made strategic purchases of companies. As relevant here, on March 2, 2015, SunOpta agreed to purchase all of the units of Citrusource, LLC ("Unit Purchase Agreement"). The Unit Purchase Agreement is attached as **<u>Exhibit A</u>**. Citrusource was in the business of sourcing and selling citrus juices and producing private label and branded beverages, including not-from-concentrate and from concentrate juice products sold (i) to the retail market in gallon, carafe and multipack formats and (ii) in wholesale bulk format.

14. One of Citrusource's most significant customers was Costco Wholesale Corporation. Mandel worked closely with Costco Wholesale Corporation for many years to maintain the relationship.

15. Under the Unit Purchase Agreement, SunOpta paid $13.3 million plus earn-out payments based on an agreed-upon formula for the units of Citrusource.

16. As part of the Unit Purchase Agreement, Mandel as the Guarantor and OC Citrus as one of the Sellers promised not to compete against SunOpta or solicit customers for a period of five years after the Closing Date (March 2, 2015):

**6.7 Restrictive Covenants**.

(a) Each Seller [(OC Citrus)], Guarantor [(Mandel)] and their respective Affiliates hereby agrees that from the Closing Date through the fifth anniversary of the Closing Date (the "**Restricted Period**"), the Sellers and Guarantor will not, other than for the benefit of the Company or its Affiliates, directly or indirectly, as an agent, consultant, director, equityholder, manager, co-partner or in any other capacity, own, operate, manage, control, engage in, invest in, be employed by or participate in any manner in, act as a consultant or advisor to, render services for (alone or in association with any Person), or otherwise assist any Person that engages in or owns, invests in, operates, manages or controls any venture or enterprise that directly or indirectly engages or proposes to engage in any business that is the same as or materially similar to the business of the Company or Buyer and its Affiliates anywhere in the world; provided nothing herein shall prohibit Sellers, Guarantor or any Affiliate of Sellers or Guarantor from owning or holding less than 1% of the outstanding shares of any class of stock of a publicly traded company that operates in the same industry as the Company or Buyer and whose stock is traded on a recognized domestic or foreign securities exchange or over-the-counter market.

(c) During the Restricted Period, neither Seller nor Guarantor (nor any Affiliate of any Seller or Guarantor) will solicit or sell to any current or potential customer or supplier of the Company as of the date hereof or take any action to encourage any current or potential customer or supplier of the Company to terminate or reduce its purchases from, or sales to, the Company of any of the products or services that were purchased from or sold to the Company prior to the date hereof.

17. Also on March 2, 2015, Mandel signed an employment agreement with SunOpta to be Vice President of Citrus Sales ("Employment Agreement"). The Employment Agreement is attached as **Exhibit B**. Under the Employment Agreement, SunOpta promised to pay Mandel $200,000 as a base salary with annual salary increases.

18. As part of the Employment Agreement, Mandel promised that while he worked at SunOpta, and for twelve months after, he would not compete with SunOpta or solicit SunOpta's customers:

> To further preserve Company's Confidential Information, goodwill and legitimate business interests, Employee agrees that during Employee's employment with Company (including any period of such employment after the Employment Period ends) and for twelve (12) months after such employment ends for any reason (the "Non-Solicitation Period"), Employee will not, directly or indirectly, solicit Company's customers with whom Employee engaged or had contact, or received Confidential Information about within the twelve (12) months prior to Employee's termination.
>
> To further preserve Company's Confidential Information, goodwill, specialized training expertise, and legitimate business interests, Employee agrees that during Employee's employment with Company (including any period of such employment after the Employment Period ends) and for twelve (12) months after such employment ends for any reason (the "Non-Compete Period"), Employee will not perform, directly or indirectly, the same or similar services provided by Employee for Company, or in a capacity that would otherwise likely result in the use or disclosure of Confidential Information, for any entity engaged in a business in which Company is engaged (including such business that is in the research, development or implementation stages), and with which Employee participated at the time of employee's termination or within the twelve (12) months prior to Employee's termination or about which Employee received Confidential Information, in any geographic region in which employee has or had duties or in which Company does business and about which Employee has received Confidential Information (the "Non-Compete Area").

(Employment Agreement Sections 6(a) and 7(a).

19. During his time at SunOpta, Mandel's duties included work with SunOpta's private label business and e-water. In particular, Mandel had unfettered access to SunOpta's pricing model, customer lists, and suppliers, including such information about SunOpta's e-water business. Not only that, as a senior leader and a necessary component of Citrusource's integration into the SunOpta enterprise, Mandel was privy to highly confidential business strategies and knew SunOpta's strategic plans with respect to its e-water business.

20. Mandel worked for SunOpta until July 2018, when he decided to leave the company.

**C.     Mandel breaches his Agreements with SunOpta**

21.    On May 25, 2018, (while still employed by SunOpta) Mandel and others formed NPL. The registered purpose of the business is beverage wholesale. In documents submitted to the California Secretary of State, Mandel is identified as the Chief Executive Officer. NPL was registered to do business in California by Mandel's brother, Dan.

22.    On its website, NPL advertises that it is focused on delivering the highest quality private label beverages for retailers across the United States. NPL claims its specialties include kombucha, e-waters, sports drinks, smoothies, and cold brew coffee. In addition, NPL promises complete beverage solutions, utilizing its extensive experience in: Formulation and Product Development; Ingredient Procurement; Production and Packaging; Quality Control and Analysis; Transportation and Logistics; and Retail Management. Esteban Sierra, a SunOpta employee until April 2018, is listed as the point of contact for NPL. Images of the website pages are attached as **Exhibit C**.

23.    Upon information and belief, NPL has offered to sell private label beverages to SunOpta's customers and to formerly Citrusource customers in violation of the restrictive covenants in the Unit Purchase Agreement and Mandel's Employment Agreement. Also, NPL openly advertises its ability to offer e-water solutions to customers who could otherwise purchase products from SunOpta. Upon information and belief, while Mandel worked for SunOpta, he engaged or had contact with the same customers that NPL now solicits or received confidential information about those customers within twelve months before his departure.

**D.     Mandel and Western Citrus, LLC**

24.    Western Citrus, LLC was formed in April 2016. Like NPL, Western Citrus was registered to do business in California by Mandel's brother, Dan Mandel. Also like NPL,

7

Esteban Sierra is listed as a representative and contact point for Western Citrus. On information and belief, Dan Mandel does not have expertise in the wholesale-beverage business. Bryan Mandel has been involved in the wholesale-beverage business for several years, though. On information and belief, Mandel also is involved with Western Citrus, directly or indirectly.

25. Costco Wholesale Corporation is among SunOpta's significant juice customers and was a significant customer of Citrusource.

26. In late 2018, Costco informed SunOpta that a portion of its orange-juice business was being awarded to a new vendor.

27. In February and March 2019, SunOpta learned that Western Citrus was the vendor awarded a portion of the Costco orange-juice business that had previously been SunOpta's business.

## COUNT I:
## BREACH OF CONTRACT (AGAINST MANDEL)

28. SunOpta restates the foregoing allegations as though set forth herein.

29. The Unit Purchase Agreement and Employment Agreement are enforceable contracts, and SunOpta has performed its obligations under the Agreements.

30. Mandel has breached the Agreements by, among other things, soliciting SunOpta customers in violation of Employment Agreement Section 6(a) and Unit Purchase Agreement Section 6.7(c); and competing with SunOpta in violation of Employment Agreement Section 7(a) and Unit Purchase Agreement Section 6.7(a).

31. By these actions, Mandel has caused damage in an amount greater than $75,000, the specific amount of which shall be determined at trial. In addition, SunOpta has suffered irreparable harm, including through the loss of its confidential information and its customer

relationships, and will continue to suffer irreparable harm unless Mandel's conduct is enjoined by this Court.

## COUNT II:
## DECLARATORY JUDGMENT (AGAINST OC CITRUS)

32. SunOpta restates the foregoing allegations as though set forth herein.

33. Pursuant to 28 U.S.C. § 2201, a "case of actual controversy" within this Court's jurisdiction exists between Plaintiff and Defendants that is ripe for adjudication.

34. Under the Unit Purchase Agreement, OC Citrus promised that it and its Affiliates would comply with the Restrictive Covenants in Section 6.7.

35. The Unit Purchase Agreement are enforceable contracts, and SunOpta has performed its obligations under the Agreement.

36. Under the Unit Purchase Agreement, OC Citrus agreed, as seller, that its "Affiliates" would abide by the restrictive covenant contained in Section 6.7 of the Unit Purchase Agreement. The term "Affiliate" is defined under the Unit Purchase Agreement as "a person that directly, or indirectly through one or more intermediaries, controls, or is controlled by, or is under common control with, the person specified."

37. Mandel is OC Citrus's sole member and, therefore, an "affiliate" of OC Citrus. OC Citrus, through Mandel, has breached the Unit Purchase Agreement by, among other things, soliciting SunOpta customers in violation Unit Purchase Agreement Section 6.7(c), and competing with SunOpta in violation of Unit Purchase Agreement Section 6.7(a).

38. SunOpta requests that the Court issue a judgment pursuant to 28 U.S.C. § 2201 declaring that OC Citrus is in breach of the Unit Purchase Agreement and that SunOpta is

excused from further performance under the Unit Purchase Agreement as it relates to OC Citrus.

## COUNT III:
## BREACH OF CONTRACT (AGAINST NPL)

39. SunOpta restates the foregoing allegations as though set forth herein.

40. The Unit Purchase Agreement and Employment Agreement are enforceable contracts, and SunOpta has performed its obligations under the Agreements.

41. NPL is a mere alter ego of Mandel. As a result, NPL is bound by the terms of the Unit Purchase Agreement and Employment Agreement.

42. NPL has breached the Agreements by, among other things, soliciting SunOpta customers in violation of Employment Agreement Section 6(a) and Unit Purchase Agreement Section 6.7(c); and competing with SunOpta in violation of Employment Agreement Section 7(a) and Unit Purchase Agreement Section 6.7(a).

43. By these actions, NPL has caused damage in an amount greater than $75,000, the specific amount of which shall be determined at trial.

## COUNT IV:
## TORTIOUS INTERFERENCE WITH CONTRACT
## (AGAINST NPL) (ALTERNATIVE TO COUNT III)

44. SunOpta restates the foregoing allegations as though set forth herein.

45. The Unit Purchase Agreement and Employment Agreement constituted binding contracts between SunOpta and Mandel.

46. NPL knew about the Unit Purchase Agreement and Employment Agreement, including Mandel's non-competition and non-solicitation obligations.

47. Nevertheless, NPL intentionally caused Mandel to breach these contractual agreements.

48. NPL's actions were not justified.

49. By these actions, NPL has caused damage in an amount greater than $75,000, the specific amount of which shall be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants and request that this Court:

a. Enjoin Defendants, and all of their respective agents, servants, officers, directors, employees, from competing with SunOpta or soliciting its customers;

b. Award SunOpta compensatory damages for all injuries suffered as a result of Defendants' wrongful conduct that are compensable in money damages;

c. Declare that OC Citrus violated the Unit Purchase Agreement and that SunOpta is excused from further performance with respect to OC Citrus;

d. Award SunOpta the costs of this action, including reasonable attorneys' fees; and

e. Award SunOpta such other and further relief as the Court may deem just and equitable.

| | |
|---|---|
| Dated: May 13, 2019 | Respectfully submitted,<br>**FAEGRE BAKER DANIELS LLP**<br><br>*/s/Kwesi D. Atta-Krah*<br>Kwesi D. Atta-Krah (DE #006259)<br>Kwesi.attakrah@faegrebd.com |
| *Of Counsel*: | 801 Grand Avenue, 33rd Floor<br>Des Moines, IA 50309-8003<br>(515) 248-9000 |
| **FAEGRE BAKER DANIELS LLP**<br>Kerry L. Bundy<br>Michael M. Sawers<br>2200 Wells Fargo Center<br>90 South Seventh Street<br>Minneapolis, MN 55402-3901<br>(612) 766-7000 | *Counsel for Plaintiff SunOpta, Inc.* |