IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| HONEYWELL INTERNATIONAL, INC., HAND HELD PRODUCTS, INC., and METROLOGIC INSTRUMENTS, INC., | ) ) ) ) | |
| Plaintiffs, | ) ) ) | C.A. No. _____ |
| v. | ) ) | |
| OPTICON, INC., OPTICON SENSORS EUROPE B.V., and OPTO ELECTRONICS CO., LTD., | ) ) ) ) | **JURY TRIAL DEMANDED** |
| Defendants. | ) ) | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiffs Honeywell International, Inc., Hand Held Products, Inc. and Metrologic

Instruments, Inc. (collectively, "Honeywell" or "Plaintiffs"), by and through their undersigned

counsel, file this Complaint against Defendants Opticon, Inc., Opticon Sensors Europe B.V., and

OPTO Electronics Co., Ltd. (Collectively "Opticon" or "Defendants") and allege on knowledge

as to their own actions, and upon knowledge and information and belief as to the actions of

others, as follows:

## NATURE OF THE ACTION

1. This action arises under the patent laws of the United States, 35 U.S.C. §§ 1, *et*

*seq.*, from Defendants' infringement of United States Patent No. 9,465,970 (the "970 Patent"),

United States Patent No. 8,978,985 (the "985 Patent"), United States Patent No. 7,148,923 (the

"923 Patent"), United States Patent No. 7,527,206 (the "206 Patent"), United States Patent No.

9,659,199 (the "199 Patent"), United States Patent No. 7,159,783 (the "783 Patent"), and United

States Patent No. 8,794,520 (the "520 Patent") (collectively, the "Asserted Patents").

## THE PARTIES

2.      Plaintiff Honeywell International, Inc. is a Delaware corporation with its principal place of business at 115 Tabor Road, Morris Plains, NJ 07950.

3.      Plaintiff Hand Held Products, Inc. is a Delaware corporation and a wholly owned subsidiary of Honeywell International Inc., with its principal place of business at 9680 Old Bailes Road, Fort Mill, South Carolina 29707.

4.      Plaintiff Metrologic Instruments, Inc. is a New Jersey corporation and a wholly owned subsidiary of Honeywell International Inc., with its principal place of business at 9680 Old Bailes Road, Fort Mill, South Carolina 29707.

5.      Defendant Opticon, Inc. ("Opticon USA") is a company organized and existing under the laws of the State of Delaware, having a principal place of business at 2220 Lind Ave. SW, Suite 100, Renton, WA 98057-3327.

6.      Defendant Opticon Sensors Europe B.V. ("Opticon Sensors") is, upon information and belief, a company organized and existing under the laws of The Netherlands, having a principal place of business at Opaallaan 35, 2132 XV Hoofddorp, Netherlands.

7.      Defendant OPTO Electronics Co., Ltd. ("OPTO") is, upon information and belief, a company organized and existing under the laws of Japan, having a principal place of business at 12-17, Tsukagoshi 4-chrome, Warabi-city Saitama Pref., 335-0002, Japan.

## JURISDICTION AND VENUE

8.      This action arises under the Patent Act, Title 35 of the United States Code, and is an action for patent infringement under § 271.

9.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

10.     This Court has personal jurisdiction over Defendants under the laws of this State and consistent with the underlying due process principles of the U.S. Constitution.  As stated, Defendant Opticon USA is incorporated in this State.  *See supra* at ¶ 5.  Opticon Sensors and OPTO are subject to jurisdiction in the United States, and specifically in the State of Delaware, pursuant to Rule 4(k)(2) of the Federal Rules of Civil Procedure.  Upon information and belief, Defendants are doing business in this State and District, have significant contacts in this State and District, have offered for sale and sold infringing products in this State and District, and have committed acts in this State and District that are the subject of the counts set forth herein.

11.     Upon information and belief, Defendants manufacture, import, offer for sale, and sell image-based barcode reading systems and imaging engines to resellers, label manufacturers, and barcode printer and reader distributors throughout the United States, including in this District.

12.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(c)(3) and 1400(b).

## HONEYWELL'S HIGH-PERFORMANCE SCANNERS AND ITS HISTORY OF INNOVATION

13.     Honeywell has been a pioneer in the barcode scanning industry since the 1960s. Since that time, thousands of retailers, distributors, healthcare providers and industrial organizations have used Honeywell's barcode scanners to improve efficiency, speed, and accuracy in their operations.  The Asserted Patents, described in more detail below, are a reflection of the breadth of Honeywell's extensive dedication and investment in barcode scanning technology.

14.     Early barcode scanners were designed only to read linear, one-dimensional (1D) barcodes.  1D barcodes use a series of lines and spaces and variable lengths to encode data. These linear barcodes can contain only a handful of characters.  Accordingly, to encode longer

strings of data, a 1D barcode would need to be physically enlarged or extended, which is not suitable for all circumstances.

**1D barcodes:**





**2D barcodes:**





15.     As a result, various two-dimensional (2D) barcodes, which use shapes to encode data, were designed.  Because data can be encoded based both on a vertical and horizontal arrangement of shapes, 2D barcodes can encode exponentially more data in the same amount of space compared to their 1D counterparts.

16.     The advent of 2D barcodes ushered in a new era with a need for advanced barcode scanners that could decode these complex arrangements of shapes and sizes.  As a pioneer in advanced 2D barcode scanners, Honeywell developed an array of products with technologies that allowed barcode scanners to seamlessly read 2D and 1D barcodes.  Because of the complexity of 2D barcodes and the complexity in reading such barcodes, even the slightest change in lighting, user hand-jitter, or angle of scanning can dramatically affect the ability to effectively and efficiently decode these barcodes.  This complexity, coupled with the need for speed of decoding, especially in healthcare, retail, and manufacturing settings, underscores the importance of Honeywell's technological advances.

17.     One of Honeywell's key innovations was the development of global-shutter technology in CMOS-based barcode scanners.  Traditionally, CMOS image sensors used a rolling shutter technique in which individual rows of pixels in the image sensor were activated and read out in sequence.  This meant that, for example, the top row of pixels in the image sensor was exposed before the bottom row of pixels.  Because rolling shutter involved exposing rows of pixels sequentially at different times, rolling shutter suffers from two disadvantages: image distortion and image blur.  To overcome these drawbacks, Honeywell engineers developed the use of global shutter technology in the CMOS image sensor, in which all or substantially all of the pixels are simultaneously exposed.  Exposing all pixels in the sensor simultaneously addresses each drawback because pixels are not exposed at different points in time during image capture.  Products incorporating global shutter were and still are far superior to scan engines utilizing rolling shutter, and this innovation resulted in significant commercial success for Honeywell's global-shutter products.

18.     Honeywell has developed technology and software programming that allows these barcode scanners to adjust automatically, in real-time, to various environmental conditions.  For example, Honeywell developed barcode scanners that can adjust exposure (light) settings on a frame-by-frame basis, which allows a barcode reader to capture higher-quality images.  An additional innovation was the development of barcode readers capable of adjusting exposure settings in a real-time fashion in a multitasking operating system environment.  Honeywell also developed barcode reader technology that improves the user experience by reducing apparent flicker from the illumination LEDs that are utilized during scanning operations while also improving the ability of the reader to read images on LCD screens.  Moreover, Honeywell developed barcode reader technology that allows the reader to determine the location of a

barcode within the frame and use information regarding the quality of the image at that location in order to obtain an improved subsequent image.  One Honeywell innovation even allows barcode scanners to be customized using a script-interpreter program.  Combined, these technologies lead to faster decode time and more accurate, concise character output.  Barcode scanners, because of Honeywell's advancements, can now quickly decode any type of barcode, regardless of environment, and can automatically adjust to different users to provide quick and accurate scanning and decoding.

## OPTICON'S INFRINGING ACTIVITIES

19.     Opticon has entered the barcode scanning market, and rather than develop its own technology, Opticon has incorporated Honeywell's patented technology into its scanning products.  Opticon unfairly competes with Honeywell in the marketplace by offering for sale and selling these infringing products throughout the United States, and in Delaware.  These infringing products include, but are not limited to, the Opticon L-50X ("L-50X").  The L-50X is used as a representative infringing product for illustration purposes in this Complaint.

20.     The Opticon L-50X is a "2D Imager barcode scanner" that "scans and decodes a wide variety of 1D or 2D barcodes" using a "CMOS area imager sensor." The L-50X utilizes a CMOS area image sensor with a scan rate of 60 frames per second.



21.     The L-50X includes a MDI-3100 scan engine.  This scan engine includes a bar code decoding module configured to decode representations of at least a two-dimensional bar code in image data captured by an image reader.  For example, the MDI-3100 data sheet states that the MDI-3100 includes a "decoder" that "reads 1D and 2D barcodes."  The scan engine includes imaging optics and a CMOS global shutter image sensor.  Indeed, Opticon advertises that the MDI-3100 uses "fast global shutter technology providing exceptional motion tolerance for moving applications."



22.    The MDI-3100 includes two red illumination LEDs that project an illumination pattern on the substrate containing a barcode in order to obtain a properly exposed image.  The MDI-3100 also includes a green aiming LED for projecting an aiming pattern on the target barcode.







23.    The MDI-3100 also includes a memory module and a processor, the Atmel

AT91SAM9G20.



24.     This processor is part of the ARM926EJ-S platform, which is described as "targeted at multi-tasking applications where full memory management, high performance, low die size, and low power are all important."



ARM926EJ-S
(r0p4/r0p5)

Technical Reference Manual

The ARM926EJ-S processor is a member of the ARM9 family of general-purpose microprocessors. The ARM926EJ-S processor is targeted at multi-tasking applications where full memory management, high performance, low die size, and low power are all important.

**ARM**

Copyright © 2001-2002 ARM Limited. All rights reserved.
ARM DDI0198D

25.     Additionally, the MDI-3100 has an "exposure time" data field that can range from 50 to 500000 and a "brightness index value" that can range from 0 to 1023.  Upon information and belief, these values are set in accordance with measurements obtained by the MDI-3100 in order to capture and decode barcodes.  The MDI-3100 includes an "auto trigger" function that automatically detects a scanned target and starts reading barcodes.  Additionally, the MDI-3100 has automatic illumination switching, which memorizes a condition in which a code can be read. The MDI-3100 is described by Opticon to operate in a reading cycle where the MDI-3100 starts reading a barcode, gets a decoded image, and if a code is not decoded the MDI-3100 runs through the reading cycle until a code is decoded.  The MDI-3100 is also optimized to be able to read LCD screens.  Further, the MDI-3100 determines the location of a barcode and provides a "coordinate output" that "allows the data output to be sent with the pixel location of where the symbol was found."



26.    Opticon also provides tools such as the "Universal Config Tool," which can be used to configure the MDI-3100 and is described by Opticon as a "Windows-based application that performs utility functions such as firmware loading on the MDI3x00 and MDI4x00 imager scan engine based products."



27.     The Universal Config Tool allows a user to create and send scripts to the MDI-3100.





28.     Opticon offers for sale and sells its infringing products throughout the United States and in this District.  In particular, and as stated, Opticon USA is incorporated in this District and, thus, is a resident and Opticon Sensors and OPTO are subject to jurisdiction pursuant to Rule 4(k)(2) of the Federal Rules of Civil Procedure.  *See*, *supra*, at ¶ 10.

29.     Opticon unfairly competes with Honeywell in the marketplace by selling the infringing products to customers throughout the United States and in this District, including to Honeywell's own customers.

30.     Through its infringing activities, Opticon has caused direct injury to Honeywell throughout the United States and in Delaware.

## THE ASSERTED PATENTS[1]

31.     The 970 Patent, entitled "Image Reader Comprising CMOS Based Image Sensor Array," issued on October 11, 2016, naming inventors Ynjiun P. Wang and William H. Havens. The 970 Patent issued from U.S. Patent Application Serial No. 14/221,903, filed on March 21, 2014.  The 970 Patent is directed to the use of global-shutter technology to expose substantially all of the pixels at once in a CMOS-based image sensor, limiting image distortion and blur.  A true and accurate copy of the 970 Patent is attached hereto as Exhibit 1.

32.     Hand Held Products, Inc. is the owner and assignee of the entire right, title, and interest in and to the 970 Patent and holds the right to sue and recover damages for infringement thereof.

---

[1] All descriptions of the inventions herein are presented to give a general background of those inventions.  Such statements are not intended to be used, nor should be used, for purposes of patent claim interpretation.  Honeywell presents these statements subject to, and without waiver of, its right to argue that claim terms should be construed in a particular way, as contemplated by claim interpretation jurisprudence and the relevant evidence.

33.     The 985 Patent, entitled "Image Reader Comprising CMOS Based Image Sensor Array," issued on March 17, 2015, naming inventors Ynjiun P. Wang and William H. Havens. The 985 Patent issued from U.S. Patent Application Serial No. 14/273,631, filed on May 19, 2014.  The 985 Patent discloses, for example, a barcode reading device using a CMOS image sensor in a global-shutter mode to decode a 1D or 2D barcode.  A true and accurate copy of the 985 Patent is attached hereto as Exhibit 2.

34.     Hand Held Products, Inc. is the owner and assignee of the entire right, title, and interest in and to the 985 Patent and holds the right to sue and recover damages for infringement thereof.

35.     The 923 Patent, entitled "Methods and Apparatus for Automatic Exposure Control," issued on December 12, 2006, naming inventors Jeffrey D. Harper, Robert M. Hussey, Matthew W. Pankow, and Timothy P. Meier.  The 923 Patent issued from U.S. Patent Application Serial No. 09/903,300, filed on July 11, 2001.  The 923 Patent is directed to barcode reading devices with automated, real-time exposure control in multi-tasking environments and methods of execution thereof.  A true and accurate copy of the 923 Patent is attached hereto as Exhibit 3.

36.     Hand Held Products, Inc. is the owner and assignee of the entire right, title, and interest in and to the 923 Patent and holds the right to sue and recover damages for infringement thereof.

37.     The 206 Patent, entitled "Method of Setting the Time Duration of Illumination From an LED-Based Illumination Array Employed in a Digital Imaging-Based Code Symbol Reader, Using an Image-Processing Based Illumination Metering Program Executed Therewithin," issued on May 5, 2009, naming inventors Xiaoxun Zhu, Yong Liu, Ka Man Au,

Rui Hou, Hongpeng Yu, Xi Tao, Liang Liu, Wenhua Zhang, and Anatoly Kotlarsky.  The 206 Patent issued from U.S. Patent Application Serial No. 11/607,114, filed on November 30, 2006. The 206 Patent is directed to illumination duration measuring and variation within barcode readers to process and decode optimally illuminated indicia bearing substrates.  A true and accurate copy of the 206 Patent is attached hereto as Exhibit 4.

38.      Metrologic Instruments, Inc. is the owner and assignee of the entire right, title, and interest in and to the 206 Patent and holds the right to sue and recover damages for infringement thereof.

39.      The 199 Patent, entitled "Terminal with Flicker-Corrected Aimer and Alternating Illumination," issued on May 23, 2017, naming inventors Daniel Van Volkinburg, Stephen Patrick Deloge, Kevin Bower, Matthew Pankow, and Ryan Kather.  The 199 Patent issued from U.S. Patent Application Serial No. 15/176,366, filed on June 8, 2016.  The 199 Patent is directed to a device and method for activating a screen reading mode with reduced flickering to read an indicia.  A true and accurate copy of the 199 Patent is attached hereto as Exhibit 5.

40.      Hand Held Products, Inc. is the owner and assignee of the entire right, title, and interest in and to the 199 Patent and holds the right to sue and recover damages for infringement thereof.

41.      The 783 Patent, entitled "Customizable Optical Reader," issued on January 9, 2007, naming inventors Joseph Walczyk, Dieter Fauth, David Holzhauer, Robert M. Hussey, Barry Keys, Joseph Livingston, and Michael D. Robinson.  The 783 Patent issued from U.S. Patent Application Serial No. 11/203,667, filed on August 12, 2005.  The 783 Patent is directed to a device and method of customizing an optical reader.  A true and accurate copy of the 783 Patent is attached hereto as Exhibit 6.

42.     Hand Held Products, Inc. is the owner and assignee of the entire right, title, and interest in and to the 783 Patent and holds the right to sue and recover damages for infringement thereof.

43.     The 520 Patent, entitled "Method and Apparatus for Operating Indicia Reading Terminal Including Parameter Determination," issued on August 5, 2014, naming inventors Ynjiun P. Wang and Shulan Deng.  The 520 Patent issued from U.S. Patent Application Serial No. 12/242,244, filed on September 30, 2008.  The 520 Patent is directed to a device and method of determining a parameter in a hand-held barcode reader.  A true and accurate copy of the 520 Patent is attached hereto as Exhibit 7.

44.     Hand Held Products, Inc. is the owner and assignee of the entire right, title, and interest in and to the 520 Patent and holds the right to sue and recover damages for infringement thereof.

## COUNT ONE – INFRINGREMENT OF THE 970 PATENT

45.     Paragraphs 1 to 44 are incorporated herein by reference as if fully stated herein.

46.     Defendants have directly and indirectly infringed, and continue to directly and indirectly infringe, the claims of the 970 Patent in violation of 35 U.S.C. § 271.

47.     Defendants infringe, contribute to the infringement of, and/or induce infringement of the 970 Patent by making, using, selling, offering for sale, and/or importing into the United States products covered by one or more claims of the 970 Patent, including, but not limited to, at least the L-50X.  As discussed, the L-50X includes the MDI-3100 scan engine that reads both 1D and 2D barcodes using a CMOS image sensor and that has a two-dimensional array of 752 x 480 pixels.  The CMOS image sensor in the MDI-3100 operates in a global shutter mode and the MDI-3100 has illumination light sources in the form of red illumination LEDs.

48.     Defendants directly infringe one or more claims of the 970 Patent.  Defendants

make, use, sell, offer for sale, and/or import, in this District and elsewhere in the United States,

infringing devices such as the L-50X, and thus directly infringe the 970 Patent.

49.     Defendants have had knowledge and notice of the 970 Patent at least as early as

the filing of this Complaint.

50.     Upon information and belief, defendants indirectly infringe the 970 Patent, as

provided in 35 U.S.C. § 271(b), by inducing infringement by others, such as Defendants'

customers, in this District and elsewhere in the United States.  For example, Defendants'

customers directly infringe through their use of the inventions claimed in the 970 Patent.

Defendants induce this direct infringement through their affirmative acts of manufacturing,

selling, distributing, and/or otherwise making available the infringing products, such as the L-

50X, and providing instructions, documentation, and other information to customers suggesting

they use the infringing products, such as the L-50X, in an infringing manner, including online

technical support, marketing, product manuals, advertisements, and online documentation.  As a

result of Defendants' inducement, Defendants' customers use the infringing products, such as the

L-50X, in the way Defendants intend, and directly infringe the 970 Patent.  Defendants have

performed and continue to perform these affirmative acts with knowledge of the 970 Patent and

with the intent, or willful blindness, that the induced acts directly infringe the 970 Patent.

51.     Defendants also indirectly infringe the 970 Patent, as provided by 35 U.S.C.

§ 271(c), by contributing to direct infringement committed by others, such as customers, in this

District and elsewhere in the United States.  Defendants' affirmative acts of selling and offering

to sell, in this District and elsewhere in the United States, infringing products such as the L-50X,

and causing these products to be manufactured, used, sold, and offered for sale, contribute to

Defendants' customers' use of the infringing products, such as the L-50X, such that the 970

Patent is directly infringed.  Upon information and belief, Defendants have performed and

continue to perform these affirmative acts with knowledge of the 970 Patent and with intent, or

willful blindness, that they cause the direct infringement of the 970 Patent.

52.     Defendants' infringement of the 970 Patent has damaged and will continue to

damage Honeywell.

## COUNT TWO – INFRINGREMENT OF THE 985 PATENT

53.     Paragraphs 1 to 52 are incorporated herein by reference as if fully stated herein.

54.     Defendants have directly and indirectly infringed, and continue to directly and

indirectly infringe, the claims of the 985 Patent in violation of 35 U.S.C. § 271.

55.     Defendants infringe, contribute to the infringement of, and/or induce infringement

of the 985 Patent by making, using, selling, offering for sale, and/or importing into the United

States products covered by one or more claims of the 985 Patent, including, but not limited to, at

least the L-50X.  As discussed, the L-50X includes the MDI-3100 scan engine that reads both 1D

and 2D barcodes using a CMOS image sensor and that has a two-dimensional array of 752 x 480

pixels.  The CMOS image sensor in the MDI-3100 operates in a global shutter mode and the

MDI-3100 has illumination light sources in the form of red illumination LEDs.  The MDI-3100

can be set to read specific barcodes by discriminating between different barcode symbologies.

56.     Defendants directly infringe one or more claims of the 985 Patent.  Defendants

make, use, sell, offer for sale, and/or import, in this District and elsewhere in the United States,

infringing devices, such as the L-50X, and thus directly infringe the 985 Patent.

57.     Defendants have had knowledge and notice of the 985 Patent at least as early as

the filing of this Complaint.

58.     Upon information and belief, Defendants indirectly infringe the 985 Patent, as provided in 35 U.S.C. § 271(b), by inducing infringement by others, such as Defendants' customers, in this District and elsewhere in the United States.  For example, Defendants' customers directly infringe through their use of the inventions claimed in the 985 Patent. Defendants induce this direct infringement through their affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the infringing products, such as the L-50X, and providing instructions, documentation, and other information to customers suggesting they use the infringing products, such as the L-50X, in an infringing manner, including online technical support, marketing, product manuals, advertisements, and online documentation.  As a result of Defendants' inducement, Defendants' customers use the infringing products, such as the L-50X, in the way Defendants intend, and directly infringe the 985 Patent.  Defendants have performed and continue to perform these affirmative acts with knowledge of the 985 Patent and with the intent, or willful blindness, that the induced acts directly infringe the 985 Patent.

59.     Defendants also indirectly infringe the 985 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement committed by others, such as customers, in this District and elsewhere in the United States.  Defendants' affirmative acts of selling and offering to sell, in this District and elsewhere in the United States, infringing products such as the L-50X, and causing these products to be manufactured, used, sold, and offered for sale, contribute to Defendants' customers' use of the infringing products, such as the L-50X, such that the 985 Patent is directly infringed.  Upon information and belief, Defendants have performed and continue to perform these affirmative acts with knowledge of the 985 Patent and with intent, or willful blindness, that they cause the direct infringement of the 985 Patent.

60.     Defendants' infringement of the 985 Patent has damaged and will continue to damage Honeywell.

## <u>COUNT THREE – INFRINGREMENT OF THE 923 PATENT</u>

61.     Paragraphs 1 to 60 are incorporated herein by reference as if fully stated herein.

62.     Defendants have directly and indirectly infringed, and continue to directly and indirectly infringe, the claims of the 923 Patent in violation of 35 U.S.C. § 271.

63.     Defendants infringe, contribute to the infringement of, and/or induce infringement of the 923 Patent by making, using, selling, offering for sale, and/or importing into the United States products covered by one or more claims of the 923 Patent, including, but not limited to, at least the L-50X.  As discussed, the Opticon L-50X is a barcode reading device incorporating the Opticon MDI-3100 scan engine.  The MDI-3100 has an optics imaging system in connection with a CMOS image sensor, a memory for storing image data, and a processor (Atmel AT91SAM9G20) for decoding the image data.  The processor includes a multitasking OS with high and low priority modules that provide imaging system control processing and image decoding capabilities, respectively.

64.     Defendants directly infringe one or more claims of the 923 Patent.  Defendants make, use, sell, offer for sale, and/or import, in this District and elsewhere in the United States, infringing devices, such as the L-50X, and thus directly infringe the 923 Patent.

65.     Defendants have had knowledge and notice of the 923 Patent at least as early as the filing of this Complaint.

66.     Upon information and belief, Defendants indirectly infringe the 923 Patent, as provided in 35 U.S.C. § 271(b), by inducing infringement by others, such as Defendants' customers, in this District and elsewhere in the United States.  For example, Defendants'

customers directly infringe through their use of the inventions claimed in the 923 Patent. Defendants induce this direct infringement through their affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the infringing products, such as the L-50X, and providing instructions, documentation, and other information to customers suggesting they use the infringing products, such as the L-50X, in an infringing manner, including online technical support, marketing, product manuals, advertisements, and online documentation.  As a result of Defendants' inducement, Defendants' customers use the infringing products, such as the L-50X, in the way Defendants intend, and directly infringe the 923 Patent.  Defendants have performed and continue to perform these affirmative acts with knowledge of the 923 Patent and with the intent, or willful blindness, that the induced acts directly infringe the 923 Patent.

67.    Defendants also indirectly infringe the 923 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement committed by others, such as customers, in this District and elsewhere in the United States.  Defendants' affirmative acts of selling and offering to sell, in this District and elsewhere in the United States, infringing products such as the L-50X, and causing these products to be manufactured, used, sold, and offered for sale, contribute to Defendants' customers' use of the infringing products, such as the L-50X, such that the 923 Patent is directly infringed.  Upon information and belief, Defendants have performed and continue to perform these affirmative acts with knowledge of the 923 Patent and with intent, or willful blindness, that they cause the direct infringement of the 923 Patent.

68.    Defendants' infringement of the 923 Patent has damaged and will continue to damage Honeywell.

## COUNT FOUR – INFRINGREMENT OF THE 206 PATENT

69.    Paragraphs 1 to 68 are incorporated herein by reference as if fully stated herein.

70.     Defendants have directly and indirectly infringed, and continue to directly and indirectly infringe, the claims of the 206 Patent in violation of 35 U.S.C. § 271.

71.     Defendants infringe, contribute to the infringement of, and/or induce infringement of the 206 Patent by making, using, selling, offering for sale, and/or importing into the United States products covered by one or more claims of the 206 Patent, including, but not limited to, at least the L-50X. As discussed, the Opticon L-50X is a barcode reading device incorporating the Opticon MDI-3100 scan engine.  The L-50X has a housing with a transmission window for the MDI-3100, which includes an image formation and detection subsystem made up of an optics imaging assembly and a CMOS image sensor that has a particular field of view relative to the transmission window.  The L-50X further includes a trigger switch to generate a trigger event when actuated.  The MDI-3100 also includes an illumination subsystem made up of LEDs, where the illumination projected by the LEDs can be measured and, subsequently, controlled based on said measurement.  The MDI-3100 additionally has a processor that is operable to decode barcodes and control the subsystems discussed above.

72.     Defendants directly infringe one or more claims of the 206 Patent.  Defendants make, use, sell, offer for sale, and/or import, in this District and elsewhere in the United States, these devices and thus directly infringe the 206 Patent.

73.     Defendants have had knowledge and notice of the 206 Patent at least as early as the filing of this Complaint.

74.     Upon information and belief, Defendants indirectly infringe the 206 Patent, as provided in 35 U.S.C. § 271(b), by inducing infringement by others, such as Defendants' customers, in this District and elsewhere in the United States.  For example, Defendants' customers directly infringe through their use of the inventions claimed in the 206 Patent.

Defendants induce this direct infringement through their affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the infringing products, such as the L-50X, and providing instructions, documentation, and other information to customers suggesting they use the infringing products, such as the L-50X, in an infringing manner, including online technical support, marketing, product manuals, advertisements, and online documentation.  As a result of Defendants' inducement, Defendants' customers use the infringing products, such as the L-50X, in the way Defendants intend and directly infringe the 206 Patent.  Defendants have performed and continue to perform these affirmative acts with knowledge of the 206 Patent and with the intent, or willful blindness, that the induced acts directly infringe the 206 Patent.

75.      Defendants also indirectly infringe the 206 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement committed by others, such as customers, in this District and elsewhere in the United States.  Defendants' affirmative acts of selling and offering to sell, in this District and elsewhere in the United States, infringing products, such as the L-50X, and causing these products to be manufactured, used, sold, and offered for sale contribute to Defendants' customers' use of the infringing products, such as the L-50X, such that the 206 Patent is directly infringed.  Upon information and belief, Defendants have performed and continue to perform these affirmative acts with knowledge of the 206 Patent and with intent, or willful blindness, that they cause the direct infringement of the 206 Patent.

76.      Defendants' infringement of the 206 Patent has damaged and will continue to damage Honeywell.

## COUNT FIVE – INFRINGREMENT OF THE 199 PATENT

77.      Paragraphs 1 to 76 are incorporated herein by reference as if fully stated herein.

78.     Defendants have directly and indirectly infringed, and continue to directly and indirectly infringe, the claims of the 199 Patent in violation of 35 U.S.C. § 271.

79.     Defendants infringe, contribute to the infringement of, and/or induce infringement of the 199 Patent by making, using, selling, offering for sale, and/or importing into the United States products covered by one or more claims of the 199 Patent, including, but not limited to, at least the L-50X.  As discussed, the Opticon L-50X is a barcode reading device incorporating the Opticon MDI-3100 scan engine.  The MDI-3100 has an imaging subsystem made up of a CMOS image sensor, an imaging optics assembly situated in connection with the image sensor, and a processor to decode the bar codes.  Further, the MDI-3100 is operable to project an illumination pattern and a separate aiming pattern using LEDs.  The illumination LEDs are operable to alternate between illuminated and unilluminated modes, allowing the MDI-3100 to acquire frames of image data both while illumination is on and while illumination is off.

80.     Defendants directly infringe one or more claims of the 199 Patent.  Defendants make, use, sell, offer for sale, and/or import, in this District and elsewhere in the United States, infringing devices, such as the L-50X, and thus directly infringe the 199 Patent.

81.     Defendants have had knowledge and notice of the 199 Patent at least as early as the filing of this Complaint.

82.     Upon information and belief, Defendants indirectly infringe the 199 Patent, as provided in 35 U.S.C. § 271(b), by inducing infringement by others, such as Defendants' customers, in this District and elsewhere in the United States.  For example, Defendants' customers directly infringe through their use of the inventions claimed in the 199 Patent. Defendants induce this direct infringement through their affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the infringing products, such as the L-

50X, and providing instructions, documentation, and other information to customers suggesting they use the infringing products, such as the L-50X, in an infringing manner, including online technical support, marketing, product manuals, advertisements, and online documentation.  As a result of Defendants' inducement, Defendants' customers use the infringing products, such as the L-50X, in the way Defendants intend and directly infringe the 199 Patent.  Defendants have performed and continue to perform these affirmative acts with knowledge of the 199 Patent and with the intent, or willful blindness, that the induced acts directly infringe the 199 Patent.

83.     Defendants also indirectly infringe the 199 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement committed by others, such as customers, in this District and elsewhere in the United States.  Defendants' affirmative acts of selling and offering to sell, in this District and elsewhere in the United States, infringing products such as the L-50X, and causing these products to be manufactured, used, sold, and offered for sale, contribute to Defendants' customers' use of the infringing products, such as the L-50X, such that the 199 Patent is directly infringed.  Upon information and belief, Defendants have performed and continue to perform these affirmative acts with knowledge of the 199 Patent and with intent, or willful blindness, that they cause the direct infringement of the 199 Patent.

84.     Defendants' infringement of the 199 Patent has damaged and will continue to damage Honeywell.

## COUNT SIX – INFRINGREMENT OF THE 783 PATENT

85.     Paragraphs 1 to 84 are incorporated herein by reference as if fully stated herein.

86.     Defendants have directly and indirectly infringed, and continue to directly and indirectly infringe, the claims of the 783 Patent in violation of 35 U.S.C. § 271.

87.     Defendants infringe, contribute to the infringement of, and/or induce infringement of the 783 Patent by making, using, selling, offering for sale, and/or importing into the United States products covered by one or more claims of the 783 Patent, including, but not limited to, at least the L-50X.  As discussed, the Opticon L-50X is a barcode reading device incorporating the Opticon MDI-3100 scan engine.  The MDI-3100 has a control circuit to control a CMOS image sensor, a memory, a processor and firmware, where the processor executes a main operating program storing instructions in the memory and firmware.  Further, Opticon provides a configuration program called Universal Config Tool, which provides instructions that are executed by a script interpreter program by the processor.

88.     Defendants directly infringe one or more claims of the 783 Patent.  Defendants make, use, sell, offer for sale, and/or import, in this District and elsewhere in the United States, infringing products, such as the L-50X, and thus directly infringe the 783 Patent.

89.     Defendants have had knowledge and notice of the 783 Patent at least as early as the filing of this Complaint.

90.     Upon information and belief, Defendants indirectly infringe the 783 Patent, as provided in 35 U.S.C. § 271(b), by inducing infringement by others, such as Defendants' customers, in this District and elsewhere in the United States.  For example, Defendants' customers directly infringe through their use of the inventions claimed in the 783 Patent. Defendants induce this direct infringement through their affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the infringing products, such as the L-50X, and providing instructions, documentation, and other information to customers suggesting they use the infringing products, such as the L-50X, in an infringing manner, including online technical support, marketing, product manuals, advertisements, and online documentation. As a

result of Defendants' inducement, Defendants' customers use the infringing products, such as the L-50X, in the way Defendants intend, and directly infringe the 783 Patent.  Defendants have performed and continue to perform these affirmative acts with knowledge of the 783 Patent and with the intent, or willful blindness, that the induced acts directly infringe the 783 Patent.

91.     Defendants also indirectly infringe the 783 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement committed by others, such as customers, in this District and elsewhere in the United States.  Defendants' affirmative acts of selling and offering to sell, in this District and elsewhere in the United States, infringing products, such as the L-50X, and causing these products to be manufactured, used, sold, and offered for sale contribute to Defendants' customers' use of the infringing products, such as the L-50X, such that the 783 Patent is directly infringed.  Upon information and belief, Defendants have performed and continue to perform these affirmative acts with knowledge of the 783 Patent and with intent, or willful blindness, that they cause the direct infringement of the 783 Patent.

92.     Defendants' infringement of the 783 Patent has damaged and will continue to damage Honeywell.

## COUNT SEVEN – INFRINGREMENT OF THE 520 PATENT

93.     Paragraphs 1 to 92 are incorporated herein by reference as if fully stated herein.

94.     Defendants have directly and indirectly infringed, and continue to directly and indirectly infringe, the claims of the 783 Patent in violation of 35 U.S.C. § 271.

95.     Defendants infringe, contribute to the infringement of, and/or induce infringement of the 520 Patent by making, using, selling, offering for sale, and/or importing into the United States products covered by one or more claims of the 520 Patent, including, but not limited to, at least the L-50X.  The Opticon L-50X is a barcode reading device incorporating the Opticon

MDI-3100 scan engine.  The MDI-3100 includes an optics assembly in connection with a CMOS

image sensor.  The L-50X has a handheld housing surrounding the MDI-3100, including the

MDI-3100 image sensor, and a trigger to initiate a decode attempt.  The L-50X is capable of

determining the location of a barcode in an image frame by determining the coordinates of the

barcode.  Further, upon information and belief, it uses the frame image data of the determined

barcode location to determine an imaging parameter, including at least the exposure period, gain,

and illumination level parameter.  Finally, upon information and belief, it is operable to use the

determined imaging parameter to capture a subsequent frame of image data, where it adjusts the

imaging parameter based on the determination.

96.     Defendants directly infringe one or more claims of the 520 Patent.  Defendants

make, use, sell, offer for sale, and/or import, in this District and elsewhere in the United States,

infringing products, such as the L-50X, and thus directly infringe the 520 Patent.

97.     Defendants have had knowledge and notice of the 520 Patent at least as early as

the filing of this Complaint.

98.     Upon information and belief, Defendants indirectly infringe the 520 Patent, as

provided in 35 U.S.C. § 271(b), by inducing infringement by others, such as Defendants'

customers, in this District and elsewhere in the United States.  For example, Defendants'

customers directly infringe through their use of the inventions claimed in the 520 Patent.

Defendants induce this direct infringement through their affirmative acts of manufacturing,

selling, distributing, and/or otherwise making available the infringing products, such as the L-

50X, and providing instructions, documentation, and other information to customers suggesting

they use the infringing products, such as the L-50X, in an infringing manner, including online

technical support, marketing, product manuals, advertisements, and online documentation.  As a

result of Defendants' inducement, Defendants' customers use the infringing products, such as the L-50X, in the way Defendants intend, and directly infringe the 520 Patent. Defendants have performed and continue to perform these affirmative acts with knowledge of the 520 Patent and with the intent, or willful blindness, that the induced acts directly infringe the 520 Patent.

99. Defendants also indirectly infringe the 520 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement committed by others, such as customers, in this District and elsewhere in the United States. Defendants' affirmative acts of selling and offering to sell, in this District and elsewhere in the United States, infringing products, such as the L-50X, and causing these products to be manufactured, used, sold, and offered for sale, contribute to Defendants' customers' use of the infringing products, such as the L-50X, such that the 520 Patent is directly infringed. Upon information and belief, Defendants have performed and continue to perform these affirmative acts with knowledge of the 520 Patent and with intent, or willful blindness, that they cause the direct infringement of the 520 Patent.

100. Defendants' infringement of the 520 Patent has damaged and will continue to damage Honeywell.

## **DAMAGES**

101. As a result of Opticon's acts of infringement, Honeywell has suffered actual and consequential damages. However, Honeywell does not yet know the full extent of the infringement and its extent cannot be ascertained except through discovery and special accounting. To the fullest extent permitted by law, Honeywell seeks recovery of damages at least for reasonable royalties, unjust enrichment, and benefits received by Opticon as a result of using misappropriated Honeywell technology. Honeywell further seeks all other damages to which Honeywell is entitled under law or in equity.

## DEMAND FOR JURY TRIAL

102.    Honeywell hereby respectfully requests a jury trial for all issues so triable.

## REQUEST FOR RELIEF

WHEREFORE, Honeywell respectfully requests the following relief:

A.  the entry of judgment on the Complaint, including all claims, causes of action, and requests for relief therein, in favor of Honeywell and against Opticon;

B.  the entry of judgment that Opticon infringes the Asserted Patents;

C.  the entry of judgment that Opticon's infringement of the Asserted Patents has been and continues to be willful;

D.  the entry of judgment against Opticon, awarding Honeywell actual damages in an amount sufficient to compensate Honeywell for Opticon's direct and indirect infringement of the Asserted Patents, until such time as Opticon ceases its infringing conduct;

E.  the entry of judgment against Opticon, awarding Honeywell enhanced damages pursuant to 35 U.S.C. § 284;

F.  the entry of judgment against Opticon, awarding Honeywell pre-judgment and post-judgment interest to the full extent allowed under the law, as well as its costs;

G.  a determination that this is an exceptional case, and an award to Honeywell of its reasonable attorneys' fees pursuant to 35 U.S.C. § 285;

H.  an order for an accounting of damages for Opticon's acts of infringement;

I.  an award to Honeywell of its costs of suit;

J.  the entry of a permanent injunction, enjoining Defendants, their officers, directors, agents, employees, parents, subsidiaries, affiliates, licensees, successors, and assigns, and

those acting in concert or participation with them, from further acts of direct and/or

indirect infringement of the Asserted Patents; and

K. an award to Honeywell of such further and additional relief, whether legal or equitable,

that Honeywell requests, that the Court determines Honeywell to be entitled, or that the

Court deems just and proper.


ASHBY & GEDDES

*Of Counsel:*

/s/ Steven J. Balick
_____

M. Scott Stevens
Adam D. Swain
**ALSTON & BIRD LLP**
950 F Street NW
Washington, DC 20004
Telephone:  (202) 239-3025
Facsimile:   (704) 654-4825

Steven J. Balick (#2114)
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE  19899
(302) 654-1888
sbalick@ashbygeddes.com
amayo@ashbygeddes.com

S. Benjamin Pleune
Stephen R. Lareau
Adam J. Doane
**ALSTON & BIRD LLP**
101 South Tryon Street
Suite 4000
Charlotte, NC 28280
Telephone: (704) 444-1098
Facsimile: (704) 444-1698

*Attorneys for Plaintiffs Honeywell
International, Inc., Hand Held
Products, Inc., and Metrologic
Instruments, Inc.*

Patrick J. Flinn
**ALSTON & BIRD LLP**
One Atlantic Center
1201 West Peachtree Street
Suite 4900
Atlanta, GA 30309
Telephone: (404) 881-7920
Facsimile: (404) 253-8370

Dated:  May 31, 2019