**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| HELIOS STREAMING, LLC, and IDEAHUB, INC., | |
| Plaintiffs, | Civil Action No. _____ |
| v. | |
| CRACKLE, INC., CRACKLE PLUS, LLC, CHICKEN SOUP FOR THE SOUL ENTERTAINMENT, INC., SONY PICTURES TELEVISION, INC., and SONY PICTURES ENTERTAINMENT, INC., | **JURY TRIAL DEMANDED** |
| Defendants. | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiffs Helios Streaming, LLC ("Helios"), and Ideahub, Inc. ("Ideahub") (collectively "Plaintiffs"), for its Complaint against Defendants Crackle, Inc. ("Crackle"), Crackle Plus, LLC ("Crackle Plus"), Chicken Soup for the Soul Entertainment, Inc. ("CSSE"), Sony Pictures Television, Inc. ("Sony TV"), and Sony Pictures Entertainment, Inc. ("Sony Entertainment"), (all Defendants are referred to collectively herein as "Defendants" and each individually as "Defendant"), alleges the following:

## NATURE OF THE ACTION

1.      This is an action for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.*

**THE PARTIES**

2.      Plaintiff Helios is a limited liability company organized under the laws of the State of Delaware with a place of business at 9880 Irvine Center Drive, Suite 200, Irvine, California 92618.

3.      Plaintiff Ideahub is a corporation organized under the laws of the Republic of Korea with a place of business at 7 Heolleungro, Seocho-gu, Seoul 06792 Republic of Korea.

4.      Upon information and belief, Crackle is a corporation organized under the laws of the State of Delaware with a place of business at 10202 West Washington Boulevard, SPP 1132, Culver City, CA 90232.  Upon information and belief, Crackle sells, offers to sell, and/or uses products and services throughout the United States, including in this judicial district, and introduces infringing products and services into the stream of commerce knowing that they would be sold and/or used in this judicial district and elsewhere in the United States.

5.      Upon information and belief, Crackle Plus is a limited liability company organized under the laws of the State of Delaware with a place of business at 132 East Putman Avenue, Floor 2W, Cos Cob, CT 06807.  Upon information and belief, Crackle Plus sells, offers to sell, and/or uses products and services throughout the United States, including in this judicial district, and introduces infringing products and services into the stream of commerce knowing that they would be sold and/or used in this judicial district and elsewhere in the United States.

6.      Upon information and belief, CSSE is a corporation organized under the laws of the State of Delaware with a place of business at 132 East Putman Avenue, Floor 2W, Cos Cob, CT 06807.  Upon information and belief, CSSE sells, offers to sell, and/or uses products and services throughout the United States, including in this judicial district, and introduces infringing

products and services into the stream of commerce knowing that they would be sold and/or used in this judicial district and elsewhere in the United States.

7.      Upon information and belief, Sony TV is a corporation organized under the laws of the State of Delaware with a place of business at 10202 West Washington Boulevard, SPP 1132, Culver City, CA 90232.  Upon information and belief, Sony TV sells, offers to sell, and/or uses products and services throughout the United States, including in this judicial district, and introduces infringing products and services into the stream of commerce knowing that they would be sold and/or used in this judicial district and elsewhere in the United States.

8.      Upon information and belief, Sony Entertainment is a corporation organized under the laws of the State of Delaware with a place of business at 10202 West Washington Boulevard, SPP 1132, Culver City, CA 90232.  Upon information and belief, Sony Entertainment sells, offers to sell, and/or uses products and services throughout the United States, including in this judicial district, and introduces infringing products and services into the stream of commerce knowing that they would be sold and/or used in this judicial district and elsewhere in the United States.

## JURISDICTION AND VENUE

9.      This is an action for patent infringement arising under the Patent Laws of the United States, Title 35 of the United States Code.

10.     This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

11.     Venue is proper in this judicial district under 28 U.S.C. § 1400(b).

12.     This Court has personal jurisdiction over each Defendant under the laws of the State of Delaware, due at least to their substantial business in Delaware and in this judicial district, directly or through intermediaries, including: (i) at least a portion of the infringements alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses

of conduct and/or deriving substantial revenue from goods and services provided to individuals

in the State of Delaware.  Further, this Court has personal jurisdiction and proper authority to

exercise venue over each Defendant because each Defendant is incorporated or its limited

liability company was formed in Delaware, and each Defendant has therefore purposely availed

itself of the privileges and benefits of the laws of the State of Delaware.

## BACKGROUND

13.     This action involves ten patents, described in detail in the counts below

(collectively, the "Asserted Patents").

14.     U.S. Patent No. 10,270,830 ("the '830 patent") claims technologies for providing

adaptive HTTP streaming services using metadata of media content that were developed in the

early 2010s by inventors Truong Cong Thang and Jin Young Lee.

15.     U.S. Patent No. 10,277,660 ("the '660 patent") claims technologies for providing

adaptive HTTP streaming services using metadata of media content that were developed in the

early 2010s by inventors Truong Cong Thang, Jin Young Lee, Seong Jun Bae, Jung Won Kang,

Soon Heung Jung, Sang Taick Park, Won Ryu, and Jae Gon Kim.

16.     U.S. Patent No. 10,313,414 ("the '414 patent") claims technologies for providing

adaptive HTTP streaming services using metadata of media content that were developed in the

early 2010s by inventors Truong Cong Thang and Jin Young Lee.

17.     U.S. Patent No. 10,356,145 ("the '145 patent") claims technologies for providing

adaptive HTTP streaming services using metadata of media content that were developed in the

early 2010s by inventors Truong Cong Thang, Jin Young Lee, Seong Jun Bae, Jung Won Kang,

Soon Heung Jung, Sang Taick Park, and Won Ryu.

18.     U.S. Patent No. 10,362,130 ("the '130 patent") claims technologies for providing

adaptive HTTP streaming services using metadata of media content that were developed in the

early 2010s by inventors Truong Cong Thang, Jin Young Lee, Seong Jun Bae, Jung Won Kang, Soon Heung Jung, Sang Taick Park, Won Ryu, and Jae Gon Kim.

19.     U.S. Patent No. 10,375,373 ("the '373 patent") claims technologies for providing adaptive HTTP streaming services using metadata of media content that were developed in the early 2010s by inventors Jin Young Lee and Nam Ho Hur.

20.     U.S. Patent No. 8,645,562 ("the '562 patent") claims technologies for providing adaptive HTTP streaming services using metadata of media content that were developed in the early 2010s by inventors Truong Cong Thang, Jin Young Lee, Seong Jun Bae, Jung Won Kang, Soon Heung Jung, Sang Taick Park, Won Ryu, and Jae Gon Kim.

21.     U.S. Patent No. 8,909,805 ("the '805 patent") claims technologies for providing adaptive HTTP streaming services using metadata of media content that were developed in the early 2010s by inventors Truong Cong Thang, Jin Young Lee, Seong Jun Bae, Jung Won Kang, Soon Heung Jung, Sang Taick Park, Won Ryu, and Jae Gon Kim.

22.     U.S. Patent No. 9,325,558 ("the '558 patent") claims technologies for providing adaptive HTTP streaming services using metadata of media content that were developed in the early 2010s by inventors Truong Cong Thang, Jin Young Lee, Seong Jun Bae, Jung Won Kang, Soon Heung Jung, Sang Taick Park, Won Ryu, and Jae Gon Kim.

23.     U.S. Patent No. 9,467,493 ("the '493 patent") claims technologies for providing adaptive HTTP streaming services using metadata of media content that were developed in the early 2010s by inventors Truong Cong Thang, Jin Young Lee, Seong Jun Bae, Jung Won Kang, Soon Heung Jung, Sang Taick Park, Won Ryu, and Jae Gon Kim.

24.     The Asserted Patents were mostly invented by researchers of the Electronics and Telecommunications Research Institute ("ETRI"), the national leader in Korea in the research

and development of information technologies. Since its inception in 1976, ETRI has developed new technologies in 4M DRAM computer memory, CDMA and 4G LTE cellular phone communications, LCD displays, Video Coding, and Media Transport & Delivery, the technology at issue in this case. ETRI employs over 1,800 research/technical staff, of whom 94% hold a post-graduate degree and 50% have earned a doctoral degree in their technological field. Over the last five years, ETRI produced 1,524 SCI papers and has 467 standard experts, applied for a total of 16,062 patents, has contributed 7,309 proposals that have been adopted by international and domestic standard organizations (ISO, IEC, ITU, 3GPP, JTC, IEEE etc.). Dr. Truong Cong Thang and Dr. Jae Gon Kim among the inventors were employees of ETRI and currently Professors in the University of Aizu, Japan, and Korea Aerospace University, respectively.

25. The Asserted Patents claim technologies fundamental to Dynamic Adaptive Streaming over HTTP ("DASH"), a media-streaming model for delivering media content.

26. DASH technology has been standardized in the ISO/IEC 23009 standards, which were developed and published by the International Organization for Standardization ("ISO") and the International Electrotechnical Commission ("IEC").

27. The claimed inventions of the Asserted Patents have been incorporated into the standard for dynamic adaptive streaming delivery of MPEG media over HTTP, ISO/IEC 23009-1:2014, and subsequent versions of this standard (collectively, these standards are referred to throughout as "MPEG-DASH").

28. MPEG-DASH technologies, including those of the claimed inventions of the Asserted Patents, facilitate high-quality streaming of media content by breaking media content— a movie, for example—into smaller parts that are each made available at a variety of bitrates. As a user plays back downloaded parts of the media content, the user's device employs an algorithm

to select subsequent media parts with the highest possible bitrate that can be downloaded in time for playback without causing delays in the user's viewing and listening experience.

29.     The MPEG-DASH standard, including the claimed inventions of the Asserted Patents, therefore enables high-quality streaming of media content over the internet delivered from conventional HTTP web servers, which was not previously possible on a large scale with prior art techniques and devices.

30.     Between approximately June and August of 2018, Plaintiff Ideahub acquired the Asserted Patents.

31.     In or about August of 2018, Plaintiff Helios obtained an exclusive license to the Asserted Patents.

<u>**COUNT I – INFRINGEMENT OF U.S. PATENT NO. 10,270,830**</u>

32.     The allegations set forth in the foregoing paragraphs 1 through 31 are incorporated into this First Claim for Relief.

33.     On April 23, 2019, the '830 patent was duly and legally issued by the United States Patent and Trademark Office under the title "Apparatus and Method for Providing Streaming Content Using Representations."  A true and correct copy of the '830 patent is attached as Exhibit 1.

34.     Ideahub is the assignee and owner of the right, title, and interest in and to the '830 patent.

35.     Helios holds the exclusive right to assert all causes of action arising under the '830 patent and the right to collect any remedies for infringement of it.

36.     Upon information and belief, Defendants have and continue directly infringe at least claims 8 and 13, and to induce the direct infringement of at least claims 1, 6, 15, and 18 of the '830 patent by selling, offering to sell, making, using, and/or providing and causing to be

used streaming media content in accordance with the MPEG-DASH standard (the "Accused Instrumentalities"), including one or more videos on demand ("VOD") such as those available at https://www.sonycrackle.com/, as set forth in detail in the preliminary and exemplary claim chart attached as Exhibit 2.

37.    Upon information and belief, the Accused Instrumentalities perform methods of providing media content performed by a server or multiple servers, comprising: transmitting a Media Presentation Description (MPD) of a media content to a client; receiving a request, from the client, for a segment of the media content; transmitting the media content to the client, wherein the MPD includes one or more periods, wherein each of the periods includes one or more adaptation sets, wherein each of the adaptation sets includes one or more representations, wherein each of the representations includes one or more segments, wherein the MPD includes one or more attributes or elements that are common to each of the periods, each of the adaptation sets, each of the representations, and each of the segments, wherein the period includes one or more attributes or elements that are common to each of the adaptation sets, each of the representations, and each of the segments for that period, wherein the adaptation set includes one or more attributes or elements that are common to each of the representations and each of the segments for that adaptation set, and wherein the representation includes one or more attributes or elements that are common to each of the segments for that representation.

38.    Upon information and belief, the Accused Instrumentalities perform methods of providing media content performed by a DASH (Dynamic Adaptive Streaming over HTTP) client, the method comprising: receiving a Media Presentation Description (MPD) of a media content; and accessing segments of the media content based on information provided by the MPD, wherein the MPD includes one or more periods, wherein each of the periods includes one

or more adaptation sets, wherein each of the adaptation sets includes one or more representations, wherein each of the representations includes one or more segments, wherein the MPD includes one or more attributes or elements that are common to each of the periods, each of the adaptation sets, each of the representations, and each of the segments, wherein the period includes one or more attributes or elements that are common to each of the adaptation sets, each of the representations, and each of the segments for that period, wherein the adaptation set includes one or more attributes or elements that are common to each of the representations and each of the segments for that adaptation set, and wherein the representation includes one or more attributes or elements that are common to each of the segments for that representation.

39.     On information and belief, the Accused Instrumentalities have been used to infringe and continue to directly infringe at least claims 1, 6, 13, 15, and 18 of the '830 patent during the pendency of the '830 patent.

40.     Since at least the time of receiving this Complaint Defendants have had actual notice that they are directly infringing and/or inducing others to infringe the '830 patent.

41.     On information and belief, the Accused Instrumentalities are used, marketed, provided to, and/or used by or for each of Defendants' partners, clients, customers, and end users across the country and in this District.

42.     Upon information and belief, since at least the time of receiving this Complaint, Defendants have induced and continue to induce others to infringe at least claims 1, 6, 15, and 18 of the '830 patent under 35 U.S.C. § 271(b) by, among other things, and with specific intent or willful blindness, actively aiding and abetting others to infringe, including but not limited to Defendants' partners and customers, whose use of the Accused Instrumentalities constitutes direct infringement of at least claims 1, 6, 15, and 18 of the '830 patent.

43.     In particular, Defendants' actions that aid and abet others such as their partners and customers to infringe include distributing the Accused Instrumentalities and providing materials and/or services related to the Accused Instrumentalities.  On information and belief, the Defendants have engaged in such actions with specific intent to cause infringement or with willful blindness to the resulting infringement because the Defendants have had actual knowledge of the '830 patent and that their acts were inducing infringement of the '830 patent since at least the time of receiving this Complaint.

44.     Helios first notified Sony Entertainment of Plaintiffs' DASH patent portfolio and Defendants' infringement of the patents in that portfolio via a letter dated August 23, 2018.

45.     Helios attempted to contact Sony Entertainment about Defendants' infringement of Plaintiffs' DASH patents five additional times over the next two months but received no response.

46.     Helios next sent a letter dated January 7, 2019 to Sony Corporation of America, reminding Defendants of Plaintiffs' DASH patent portfolio and Defendants' infringement of the patents in that portfolio.  Approximately two weeks later, on or about January 23, 2019, Sony Corporation of America responded stating that the matter was under internal review.

47.     On or about February 4, 2019, Helios sent a follow-up communication providing evidence of Defendants' use of infringing technology and requesting that the parties enter into a standard non-disclosure agreement ("NDA") to facilitate free discussion between the parties.

48.     After repeated follow-up communications from Helios, on or about March 28, 2019, Sony Corporation of America sent a template NDA for Helios's review.

49.     Helios promptly sent its proposed changes to the NDA to Sony Corporation of America on or about April 8, 2019.

50.     After further repeated follow-up communications by Helios, Sony Corporation of America responded on or about May 24, 2019, stating that Crackle had become a joint venture between CSSE and Sony Pictures Television.

51.     On or about May 28, 2019, Helios expressed its preference to continue its discussions with Sony Corporation of America.

52.     On or about June 4, 2019, Sony Corporation of America again advised that Helios should contact CSSE and provided Helios with a contact person at CSSE.

53.     On or about June 12, 2019, Helios again expressed its preference to continue discussions with Sony Corporation of America.

54.     On or about August 30, 2019, Sony Corporation of America once again advised Helios to contact CSSE and confirmed that the joint venture would be responsible for any claims of past infringement of Plaintiffs' DASH patent portfolio.

55.     On or about September 10, 2019, Helios spoke directly with Sony Corporation of America, who confirmed that any past infringement and go forward license of Plaintiffs' DASH patent portfolio would be the responsibility of the joint venture, and that CSSE was aware of the licensing matter.  Sony Corporation of America provided a contact person at CSSE and advised Helios to contact them directly.

56.     On or about September 10, 2019, Helios sent a communication to CSSE, providing a history of its communications with Sony Corporation of America and requesting that the parties enter into a standard NDA to facilitate free discussion between the parties.

57.     On or about September 18, 2019, Helios again sent a communication to CSSE, including a copy of Helios's letter to Sony Corporation of America dated January 7, 2019, and

requested a time to speak by phone.  To date, Helios has not received a response back from CSSE.

58.     Despite the passage of more than one year, Defendants have avoided participating in substantive licensing discussions with Helios and continue to infringe and/or to induce the infringement of the patents in Plaintiffs' DASH portfolio.

59.     On information and belief, Defendants' infringement has been and continues to be willful.

60.     Plaintiffs have been harmed by the Defendants' infringing activities.

## COUNT II – INFRINGEMENT OF U.S. PATENT NO. 10,277,660

61.     The allegations set forth in the foregoing paragraphs 1 through 60 are incorporated into this Second Claim for Relief.

62.     On April 30, 2019, the '660 patent was duly and legally issued by the United States Patent and Trademark Office under the title "Apparatus and Method for Providing Streaming Content."  A true and correct copy of the '660 patent is attached as Exhibit 3.

63.     Ideahub is the assignee and owner of the right, title, and interest in and to the '660 patent.

64.     Helios holds the exclusive right to assert all causes of action arising under the '660 patent and the right to collect any remedies for infringement of it.

65.     Upon information and belief, Defendants have and continue to directly infringe at least claims 20 and 21 of the '660 patent by selling, offering to sell, making, using, and/or providing and causing to be used streaming media content in accordance with the MPEG-DASH standard (the "Accused Instrumentalities"), including one or more videos on demand ("VOD") such as those available at https://www.sonycrackle.com/, as set forth in detail in the preliminary and exemplary claim chart attached as Exhibit 4.

66.     Upon information and belief, the Accused Instrumentalities perform methods for providing a media content performed by a server or multiple servers, comprising: receiving, from a client, a Uniform Resource Locator (URL) request for a segment of the media content based on a metadata of the media content, wherein the metadata comprises a BaseURL element; and sending the requested segment to the client; wherein the metadata does not comprise a sourceURL attribute of the requested segment, the BaseURL element is used to replace the sourceURL attribute so that the URL is generated.

67.     On information and belief, the Accused Instrumentalities have been used to infringe and continue to directly infringe at least claims 20 and 21 of the '660 patent during the pendency of the '660 patent.

68.     Since at least the time of receiving this Complaint Defendants have had actual notice that they are directly infringing the '660 patent.

69.     On information and belief, the Accused Instrumentalities are used, marketed, provided to, and/or used by or for each of Defendants' partners, clients, customers, and end users across the country and in this District.

70.     Helios first notified Sony Entertainment of Plaintiffs' DASH patent portfolio and Defendants' infringement of the patents in that portfolio via a letter dated August 23, 2018.

71.     Helios attempted to contact Sony Entertainment about Defendants' infringement of Plaintiffs' DASH patents five additional times over the next two months but received no response.

72.     Helios next sent a letter dated January 7, 2019 to Sony Corporation of America, reminding Defendants of Plaintiffs' DASH patent portfolio and Defendants' infringement of the

patents in that portfolio.  Approximately two weeks later, on or about January 23, 2019, Sony

Corporation of America responded stating that the matter was under internal review.

74.     On or about February 4, 2019, Helios sent a follow-up communication providing

evidence of Defendants' use of infringing technology and requesting that the parties enter into a

standard non-disclosure agreement ("NDA") to facilitate free discussion between the parties.

74.     After repeated follow-up communications from Helios, on or about March 28,

2019, Sony Corporation of America sent a template NDA for Helios's review.

75.     Helios promptly sent its proposed changes to the NDA to Sony Corporation of

America on or about April 8, 2019.

76.     After further repeated follow-up communications by Helios, Sony Corporation of

America responded on or about May 24, 2019, stating that Crackle had become a joint venture

between CSSE and Sony Pictures Television.

77.     On or about May 28, 2019, Helios expressed its preference to continue its

discussions with Sony Corporation of America.

78.     On or about June 4, 2019, Sony Corporation of America again advised that Helios

should contact CSSE and provided Helios with a contact person at CSSE.

79.     On or about June 12, 2019, Helios again expressed its preference to continue

discussions with Sony Corporation of America.

80.     On or about August 30, 2019, Sony Corporation of America once again advised

Helios to contact CSSE and confirmed that the joint venture would be responsible for any claims

of past infringement of Plaintiffs' DASH patent portfolio.

81.     On or about September 10, 2019, Helios spoke directly with Sony Corporation of

America, who confirmed that any past infringement and go forward license of Plaintiffs' DASH

patent portfolio would be the responsibility of the joint venture, and that CSSE was aware of the licensing matter.  Sony Corporation of America provided a contact person at CSSE and advised Helios to contact them directly.

82.     On or about September 10, 2019, Helios sent a communication to CSSE, providing a history of its communications with Sony Corporation of America and requesting that the parties enter into a standard NDA to facilitate free discussion between the parties.

83.     On or about September 18, 2019, Helios again sent a communication to CSSE, including a copy of Helios's letter to Sony Corporation of America dated January 7, 2019, and requested a time to speak by phone.  To date, Helios has not received a response back from CSSE.

84.     Despite the passage of more than one year, Defendants have avoided participating in substantive licensing discussions with Helios and continue to infringe and/or to induce the infringement of the patents in Plaintiffs' DASH portfolio.

85.     On information and belief, Defendants' infringement has been and continues to be willful.

86.     Plaintiffs have been harmed by the Defendants' infringing activities.

## COUNT III – INFRINGEMENT OF U.S. PATENT NO. 10,313,414

87.     The allegations set forth in the foregoing paragraphs 1 through 86 are incorporated into this Third Claim for Relief.

88.     On June 4, 2019, the '414 patent was duly and legally issued by the United States Patent and Trademark Office under the title "Apparatus and Method for Providing Streaming Content Using Representations."  A true and correct copy of the '414 patent is attached as Exhibit 5.

89.     Ideahub is the assignee and owner of the right, title, and interest in and to the '414 patent.

90.     Helios holds the exclusive right to assert all causes of action arising under the '414 patent and the right to collect any remedies for infringement of it.

91.     Upon information and belief, Defendants have and continue to directly infringe at least claims 11, 16, 18, 19, and 20 and to induce the direct infringement of at least claims 1, 6, 8, 9, and 10 of the '414 patent by selling, offering to sell, making, using, and/or providing and causing to be used streaming media content in accordance with the MPEG-DASH standard (the "Accused Instrumentalities"), including one or more videos on demand ("VOD") such as those available at https://www.sonycrackle.com/, as set forth in detail in the preliminary and exemplary claim chart attached as Exhibit 6.

92.     Upon information and belief, the Accused Instrumentalities perform methods of providing media content performed by a server or multiple servers, comprising: transmitting a Media Presentation Description (MPD) of a media content to a client; receiving a request, from the client, for a segment of the media content; transmitting the media content to the client, wherein the MPD includes one or more periods, wherein each of the periods includes one or more adaptation sets, wherein each of the adaptation sets includes one or more representations, wherein each of the representations includes one or more segments, wherein the MPD, the period, the adaptation set, the representation or the segments includes one or more attributes or elements, and, wherein the adaptation set includes one or more attributes or elements that are common to each of the representations for that adaptation set.

93.     Upon information and belief, the Accused Instrumentalities perform methods of providing media content performed by a DASH (Dynamic Adaptive Streaming over HTTP)

client, the method comprising: receiving a Media Presentation Description (MPD) of a media content; and accessing segments of the media content based on information provided by the MPD, wherein the MPD includes one or more periods, wherein each of the periods includes one or more adaptation sets, wherein each of the adaptation sets includes one or more representations, wherein each of the representations includes one or more segments, wherein the MPD, the period, the adaptation set, the representation, or the segments includes one or more attributes or elements, and wherein the adaptation set includes one or more attributes or elements that are common to each of the representations for that adaptation set.

94.     On information and belief, the Accused Instrumentalities have been used to infringe and continue to directly infringe at least claims 1, 6, 8, 9, 10, 11, 16, 18, 19, and 20 of the '414 patent during the pendency of the '414 patent.

95.     Since at least the time of receiving this Complaint Defendants have had actual notice that they are directly infringing and/or inducing others to infringe the '414 patent.

96.     On information and belief, the Accused Instrumentalities are used, marketed, provided to, and/or used by or for each of Defendants' partners, clients, customers, and end users across the country and in this District.

97.     Upon information and belief, since at least the time of receiving this Complaint, Defendants have induced and continue to induce others to infringe at least claims 1, 6, 8, 9, and 10 of the '414 patent under 35 U.S.C. § 271(b) by, among other things, and with specific intent or willful blindness, actively aiding and abetting others to infringe, including but not limited to Defendants' partners and customers, whose use of the Accused Instrumentalities constitutes direct infringement of at least claims 1, 6, 8, 9, and 10 of the '414 patent.

98.     In particular, Defendants' actions that aid and abet others such as their partners and customers to infringe include distributing the Accused Instrumentalities and providing materials and/or services related to the Accused Instrumentalities.  On information and belief, the Defendants have engaged in such actions with specific intent to cause infringement or with willful blindness to the resulting infringement because the Defendants have had actual knowledge of the '414 patent and that their acts were inducing infringement of the '414 patent since at least the time of receiving this Complaint.

99.     Helios first notified Sony Entertainment of Plaintiffs' DASH patent portfolio and Defendants' infringement of the patents in that portfolio via a letter dated August 23, 2018.

100.     Helios attempted to contact Sony Entertainment about Defendants' infringement of Plaintiffs' DASH patents five additional times over the next two months but received no response.

101.     Helios next sent a letter dated January 7, 2019 to Sony Corporation of America, reminding Defendants of Plaintiffs' DASH patent portfolio and Defendants' infringement of the patents in that portfolio.  Approximately two weeks later, on or about January 23, 2019, Sony Corporation of America responded stating that the matter was under internal review.

102.     On or about February 4, 2019, Helios sent a follow-up communication providing evidence of Defendants' use of infringing technology and requesting that the parties enter into a standard non-disclosure agreement ("NDA") to facilitate free discussion between the parties.

103.     After repeated follow-up communications from Helios, on or about March 28, 2019, Sony Corporation of America sent a template NDA for Helios's review.

104.     Helios promptly sent its proposed changes to the NDA to Sony Corporation of America on or about April 8, 2019.

105.    After further repeated follow-up communications by Helios, Sony Corporation of America responded on or about May 24, 2019, stating that Crackle had become a joint venture between CSSE and Sony Pictures Television.

106.    On or about May 28, 2019, Helios expressed its preference to continue its discussions with Sony Corporation of America.

107.    On or about June 4, 2019, Sony Corporation of America again advised that Helios should contact CSSE and provided Helios with a contact person at CSSE.

108.    On or about June 12, 2019, Helios again expressed its preference to continue discussions with Sony Corporation of America.

109.    On or about August 30, 2019, Sony Corporation of America once again advised Helios to contact CSSE and confirmed that the joint venture would be responsible for any claims of past infringement of Plaintiffs' DASH patent portfolio.

110.    On or about September 10, 2019, Helios spoke directly with Sony Corporation of America, who confirmed that any past infringement and go forward license of Plaintiffs' DASH patent portfolio would be the responsibility of the joint venture, and that CSSE was aware of the licensing matter.  Sony Corporation of America provided a contact person at CSSE and advised Helios to contact them directly.

111.    On or about September 10, 2019, Helios sent a communication to CSSE, providing a history of its communications with Sony Corporation of America and requesting that the parties enter into a standard NDA to facilitate free discussion between the parties.

112.    On or about September 18, 2019, Helios again sent a communication to CSSE, including a copy of Helios's letter to Sony Corporation of America dated January 7, 2019, and

requested a time to speak by phone.  To date, Helios has not received a response back from CSSE.

113.    Despite the passage of more than one year, Defendants have avoided participating in substantive licensing discussions with Helios and continue to infringe and/or to induce the infringement of the patents in Plaintiffs' DASH portfolio.

114.    On information and belief, Defendants' infringement has been and continues to be willful.

115.    Plaintiffs have been harmed by the Defendants' infringing activities.

**COUNT IV – INFRINGEMENT OF U.S. PATENT NO. 10,356,145**

116.    The allegations set forth in the foregoing paragraphs 1 through 115 are incorporated into this Fourth Claim for Relief.

117.    On July 16, 2019, the '145 Patent was duly and legally issued by the United States Patent and Trademark Office under the title "Method and Device for Providing Streaming Content."  A true and correct copy of the '145 patent is attached as Exhibit 7.

118.    Ideahub is the assignee and owner of the right, title, and interest in and to the '145 patent.

119.    Helios holds the exclusive right to assert all causes of action arising under the '145 patent and the right to collect any remedies for infringement of it.

120.    Upon information and belief, Defendants have and continue to directly infringe at least claims 1 and 2, and to induce the direct infringement of at least claims 3 and 4 of the '145 patent by selling, offering to sell, making, using, and/or providing and causing to be used streaming media content (the "Accused Instrumentalities"), including one or more videos on demand ("VOD") such as those available at https://www.sonycrackle.com/, as set forth in detail in the preliminary and exemplary claim chart attached as Exhibit 8.

121.    Upon information and belief, the Accused Instrumentalities perform methods of providing media content performed by a server or multiple servers, comprising: receiving a request for the media content from a client based on a media presentation description (MPD) with respect to the media content; and providing a segment of media content through streaming to the client in response to the request, wherein the MPD includes one or more periods, wherein the period includes one or more groups, wherein the group includes one or more representations, wherein the representation includes one or more segments, wherein the group includes one or more group elements for each of the groups, and wherein a group element provides a summary of values of all representations with a group.

122.    Upon information and belief, the Accused Instrumentalities perform methods of providing media content performed by a client, the method comprising: transmitting a request for the media content to a server based on a media presentation description (MPD) with respect to the media content; and receiving a segment of media content through streaming from the server in response to the request, wherein the MPD includes one or more periods, wherein the period includes one or more groups, wherein the group includes one or more representations, wherein the representation includes one or more segments, wherein the group includes one or more group elements for each of the groups, and wherein a group element provides a summary of values of all representations within a group.

123.    On information and belief, the Accused Instrumentalities have been used to infringe and continue to directly infringe at least claims 1, 2, 3, and 4 of the '145 patent during the pendency of the '145 patent.

124.    Since at least the time of receiving this Complaint Defendants have had actual notice that they are directly infringing and/or inducing others to infringe the '145 patent.

125.    On information and belief, the Accused Instrumentalities are used, marketed, provided to, and/or used by or for each of Defendants' partners, clients, customers, and end users across the country and in this District.

126.    Upon information and belief, since at least the time of receiving this Complaint, Defendants have induced and continue to induce others to infringe at least claims 3 and 4 of the '145 patent under 35 U.S.C. § 271(b) by, among other things, and with specific intent or willful blindness, actively aiding and abetting others to infringe, including but not limited to Defendants' partners and customers, whose use of the Accused Instrumentalities constitutes direct infringement of at least claims 3 and 4 of the '145 patent.

127.    In particular, Defendants' actions that aid and abet others such as their partners and customers to infringe include distributing the Accused Instrumentalities and providing materials and/or services related to the Accused Instrumentalities.  On information and belief, the Defendants have engaged in such actions with specific intent to cause infringement or with willful blindness to the resulting infringement because the Defendants have had actual knowledge of the '145 patent and that their acts were inducing infringement of the '145 patent since at least the time of receiving this Complaint.

128.    Helios first notified Sony Entertainment of Plaintiffs' DASH patent portfolio and Defendants' infringement of the patents in that portfolio via a letter dated August 23, 2018.

129.    Helios attempted to contact Sony Entertainment about Defendants' infringement of Plaintiffs' DASH patents five additional times over the next two months but received no response.

130.    Helios next sent a letter dated January 7, 2019 to Sony Corporation of America, reminding Defendants of Plaintiffs' DASH patent portfolio and Defendants' infringement of the

patents in that portfolio.  Approximately two weeks later, on or about January 23, 2019, Sony

Corporation of America responded stating that the matter was under internal review.

131.    On or about February 4, 2019, Helios sent a follow-up communication providing

evidence of Defendants' use of infringing technology and requesting that the parties enter into a

standard non-disclosure agreement ("NDA") to facilitate free discussion between the parties.

132.    After repeated follow-up communications from Helios, on or about March 28,

2019, Sony Corporation of America sent a template NDA for Helios's review.

133.    Helios promptly sent its proposed changes to the NDA to Sony Corporation of

America on or about April 8, 2019.

134.    After further repeated follow-up communications by Helios, Sony Corporation of

America responded on or about May 24, 2019, stating that Crackle had become a joint venture

between CSSE and Sony Pictures Television.

135.    On or about May 28, 2019, Helios expressed its preference to continue its

discussions with Sony Corporation of America.

136.    On or about June 4, 2019, Sony Corporation of America again advised that Helios

should contact CSSE and provided Helios with a contact person at CSSE.

137.    On or about June 12, 2019, Helios again expressed its preference to continue

discussions with Sony Corporation of America.

138.    On or about August 30, 2019, Sony Corporation of America once again advised

Helios to contact CSSE and confirmed that the joint venture would be responsible for any claims

of past infringement of Plaintiffs' DASH patent portfolio.

139.    On or about September 10, 2019, Helios spoke directly with Sony Corporation of

America, who confirmed that any past infringement and go forward license of Plaintiffs' DASH

patent portfolio would be the responsibility of the joint venture, and that CSSE was aware of the licensing matter.  Sony Corporation of America provided a contact person at CSSE and advised Helios to contact them directly.

140.     On or about September 10, 2019, Helios sent a communication to CSSE, providing a history of its communications with Sony Corporation of America and requesting that the parties enter into a standard NDA to facilitate free discussion between the parties.

141.     On or about September 18, 2019, Helios again sent a communication to CSSE, including a copy of Helios's letter to Sony Corporation of America dated January 7, 2019, and requested a time to speak by phone.  To date, Helios has not received a response back from CSSE.

142.     Despite the passage of more than one year, Defendants have avoided participating in substantive licensing discussions with Helios and continue to infringe and/or to induce the infringement of the patents in Plaintiffs' DASH portfolio.

143.     On information and belief, Defendants' infringement has been and continues to be willful.

144.     Plaintiffs have been harmed by the Defendants' infringing activities.

## COUNT V – INFRINGEMENT OF U.S. PATENT NO. 10,362,130

145.     The allegations set forth in the foregoing paragraphs 1 through 144 are incorporated into this Fifth Claim for Relief.

146.     On July 23, 2019, the '130 patent was duly and legally issued by the United States Patent and Trademark Office under the title "Apparatus and Method for Providing Streaming Contents."  A true and correct copy of the '130 patent is attached as Exhibit 9.

147.     Ideahub is the assignee and owner of the right, title, and interest in and to the '130 patent.

148.     Helios holds the exclusive right to assert all causes of action arising under the '130 patent and the right to collect any remedies for infringement of it.

149.     Upon information and belief, Defendants have and continue to directly infringe at least claims 1, 2, 4, and 5 of the '130 patent by selling, offering to sell, making, using, and/or providing and causing to be used streaming media content in accordance with the MPEG-DASH standard (the "Accused Instrumentalities"), including one or more videos on demand ("VOD") such as those available at https://www.sonycrackle.com/, as set forth in detail in the preliminary and exemplary claim chart attached as Exhibit 10.

150.     Upon information and belief, the Accused Instrumentalities perform methods of providing media content performed by a processor in a server, the method comprising: receiving a request for the media content from a client; transmitting the media to the client based on a Media Presentation Description (MPD) of the media content, wherein the MPD comprises one or more periods, wherein the period comprises one or more groups, wherein the group comprises one or more representations, wherein the representation comprises one or more segments, wherein the representation includes bandwidth attribute related to bandwidth for a hypothetical constant bitrate channel in bits per second (bps), wherein the client is assured of having enough data continuously playout after buffering for minbuffertime, when the representation is delivered to the client, wherein the segment includes sub-segments indexed by segment index, wherein the MPD includes at least one of (i) frame rate, or (ii) timescale describing the number of time units in one second.

151.     On information and belief, the Accused Instrumentalities have infringed and continue to directly infringe at least claims 1, 2, 4, and 5 of the '130 patent during the pendency of the '130 patent.

152.     Since at least the time of receiving this Complaint Defendants have had actual notice that they are directly infringing the '130 patent.

153.     On information and belief, the Accused Instrumentalities are used, marketed, provided to, and/or used by or for each of Defendants' partners, clients, customers, and end users across the country and in this District.

154.     Helios first notified Sony Entertainment of Plaintiffs' DASH patent portfolio and Defendants' infringement of the patents in that portfolio via a letter dated August 23, 2018.

155.     Helios attempted to contact Sony Entertainment about Defendants' infringement of Plaintiffs' DASH patents five additional times over the next two months but received no response.

156.     Helios next sent a letter dated January 7, 2019 to Sony Corporation of America, reminding Defendants of Plaintiffs' DASH patent portfolio and Defendants' infringement of the patents in that portfolio.  Approximately two weeks later, on or about January 23, 2019, Sony Corporation of America responded stating that the matter was under internal review.

157.     On or about February 4, 2019, Helios sent a follow-up communication providing evidence of Defendants' use of infringing technology and requesting that the parties enter into a standard non-disclosure agreement ("NDA") to facilitate free discussion between the parties.

158.     After repeated follow-up communications from Helios, on or about March 28, 2019, Sony Corporation of America sent a template NDA for Helios's review.

159.     Helios promptly sent its proposed changes to the NDA to Sony Corporation of America on or about April 8, 2019.

160.     After further repeated follow-up communications by Helios, Sony Corporation of America responded on or about May 24, 2019, stating that Crackle had become a joint venture between CSSE and Sony Pictures Television.

161.     On or about May 28, 2019, Helios expressed its preference to continue its discussions with Sony Corporation of America.

162.     On or about June 4, 2019, Sony Corporation of America again advised that Helios should contact CSSE and provided Helios with a contact person at CSSE.

163.     On or about June 12, 2019, Helios again expressed its preference to continue discussions with Sony Corporation of America.

164.     On or about August 30, 2019, Sony Corporation of America once again advised Helios to contact CSSE and confirmed that the joint venture would be responsible for any claims of past infringement of Plaintiffs' DASH patent portfolio.

165.     On or about September 10, 2019, Helios spoke directly with Sony Corporation of America, who confirmed that any past infringement and go forward license of Plaintiffs' DASH patent portfolio would be the responsibility of the joint venture, and that CSSE was aware of the licensing matter.  Sony Corporation of America provided a contact person at CSSE and advised Helios to contact them directly.

166.     On or about September 10, 2019, Helios sent a communication to CSSE, providing a history of its communications with Sony Corporation of America and requesting that the parties enter into a standard NDA to facilitate free discussion between the parties.

167.     On or about September 18, 2019, Helios again sent a communication to CSSE, including a copy of Helios's letter to Sony Corporation of America dated January 7, 2019, and

requested a time to speak by phone.  To date, Helios has not received a response back from CSSE.

168.     Despite the passage of more than one year, Defendants have avoided participating in substantive licensing discussions with Helios and continue to infringe and/or to induce the infringement of the patents in Plaintiffs' DASH portfolio.

169.     On information and belief, Defendants' infringement has been and continues to be willful.

170.     Plaintiffs have been harmed by the Defendants' infringing activities.

**COUNT VI – INFRINGEMENT OF U.S. PATENT NO. 10,375,373**

171.     The allegations set forth in the foregoing paragraphs 1 through 170 are incorporated into this Sixth Claim for Relief.

172.     On August 6, 2019, the '373 patent was duly and legally issued by the United States Patent and Trademark Office under the title "Method and Apparatus for Encoding Three-Dimensional (3D) Content."  A true and correct copy of the '373 patent is attached as Exhibit 11.

173.     Ideahub is the assignee and owner of the right, title, and interest in and to the '373 patent.

174.     Helios holds the exclusive right to assert all causes of action arising under the '373 patent and the right to collect any remedies for infringement of it.

175.     Upon information and belief, Defendants have and continue to directly infringe at least claims 1, 2, 3, 5, 7, 8, 9, 10, 11, 13, 15, and 16, and to induce the direct infringement of at least claims 17, 18, 19, 21, 23, and 24 of the '373 patent by selling, offering to sell, making, using, and/or providing and causing to be used streaming media content in accordance with the MPEG-DASH standard (the "Accused Instrumentalities"), including one or more videos on

demand ("VOD") such as those available at https://www.sonycrackle.com/, as set forth in detail in the preliminary and exemplary claim chart attached as Exhibit 12.

176.     Upon information and belief, the Accused Instrumentalities perform methods of adaptive streaming service performed by a server or multiple servers, the method comprising: receiving a request, from a client, for a segment of a media content based on metadata of the media content, wherein the metadata is a Media Presentation Description (MPD), and wherein the MPD is a description of a media presentation related to the media content; and providing the media content based on the request, wherein the MPD includes at least one period, wherein each period includes at least one adaptation set comprising a media content component, wherein each adaptation set includes at least one representation, wherein each representation includes at least one segment, and wherein the MPD provides information that enables the client to switch from one representation to another representation to adapt to a network condition.

177.     Upon information and belief, the Accused Instrumentalities perform methods of providing adaptive streaming services performed by a client, the methods comprising: transmitting a request, to a server or multiple servers, for a segment of a media content based on metadata of the media content, wherein the metadata is a Media Presentation Description (MPD), and wherein the MPD is a description of a media presentation related to the media content; and receiving the media content, based on the request, from the server or multiple servers, wherein the MPD includes at least one period, wherein each period includes at least one adaptation set comprising a media content component, wherein each adaptation set includes at least one representation, wherein each representation includes at least one segment, and wherein the MPD provides information that enables the client to switch from one representation to another representation to adapt to a network condition.

178.     On information and belief, the Accused Instrumentalities have been used to infringe and continue to directly infringe at least claims 1, 2, 3, 5, 7, 8, 9, 10, 11, 13, 15, 16, 17, 18, 19, 21, 23, and 24 of the '373 patent during the pendency of the '373 patent.

179.     Since at least the time of receiving this Complaint Defendants have had actual notice that they are directly infringing and/or inducing others to infringe the '373 patent.

180.     On information and belief, the Accused Instrumentalities are used, marketed, provided to, and/or used by or for each of Defendants' partners, clients, customers, and end users across the country and in this District.

181.     Upon information and belief, since at least the time of receiving this Complaint, Defendants have induced and continue to induce others to infringe at least claims 17, 18, 19, 21, 23, and 24 of the '373 patent under 35 U.S.C. § 271(b) by, among other things, and with specific intent or willful blindness, actively aiding and abetting others to infringe, including but not limited to Defendants' partners and customers, whose use of the Accused Instrumentalities constitutes direct infringement of at least claims 17, 18, 19, 21, 23, and 24 of the '373 patent.

182.     In particular, Defendants' actions that aid and abet others such as their partners and customers to infringe include distributing the Accused Instrumentalities and providing materials and/or services related to the Accused Instrumentalities.  On information and belief, the Defendants have engaged in such actions with specific intent to cause infringement or with willful blindness to the resulting infringement because the Defendants have had actual knowledge of the '373 patent and that their acts were inducing infringement of the '373 patent since at least the time of receiving this Complaint.

183.     Helios first notified Sony Entertainment of Plaintiffs' DASH patent portfolio and Defendants' infringement of the patents in that portfolio via a letter dated August 23, 2018.

184.    Helios attempted to contact Sony Entertainment about Defendants' infringement of Plaintiffs' DASH patents five additional times over the next two months but received no response.

185.    Helios next sent a letter dated January 7, 2019 to Sony Corporation of America, reminding Defendants of Plaintiffs' DASH patent portfolio and Defendants' infringement of the patents in that portfolio.  Approximately two weeks later, on or about January 23, 2019, Sony Corporation of America responded stating that the matter was under internal review.

186.    On or about February 4, 2019, Helios sent a follow-up communication providing evidence of Defendants' use of infringing technology and requesting that the parties enter into a standard non-disclosure agreement ("NDA") to facilitate free discussion between the parties.

187.    After repeated follow-up communications from Helios, on or about March 28, 2019, Sony Corporation of America sent a template NDA for Helios's review.

188.    Helios promptly sent its proposed changes to the NDA to Sony Corporation of America on or about April 8, 2019.

189.    After further repeated follow-up communications by Helios, Sony Corporation of America responded on or about May 24, 2019, stating that Crackle had become a joint venture between CSSE and Sony Pictures Television.

190.    On or about May 28, 2019, Helios expressed its preference to continue its discussions with Sony Corporation of America.

191.    On or about June 4, 2019, Sony Corporation of America again advised that Helios should contact CSSE and provided Helios with a contact person at CSSE.

192.    On or about June 12, 2019, Helios again expressed its preference to continue discussions with Sony Corporation of America.

193.    On or about August 30, 2019, Sony Corporation of America once again advised Helios to contact CSSE and confirmed that the joint venture would be responsible for any claims of past infringement of Plaintiffs' DASH patent portfolio.

194.    On or about September 10, 2019, Helios spoke directly with Sony Corporation of America, who confirmed that any past infringement and go forward license of Plaintiffs' DASH patent portfolio would be the responsibility of the joint venture, and that CSSE was aware of the licensing matter.  Sony Corporation of America provided a contact person at CSSE and advised Helios to contact them directly.

195.    On or about September 10, 2019, Helios sent a communication to CSSE, providing a history of its communications with Sony Corporation of America and requesting that the parties enter into a standard NDA to facilitate free discussion between the parties.

196.    On or about September 18, 2019, Helios again sent a communication to CSSE, including a copy of Helios's letter to Sony Corporation of America dated January 7, 2019, and requested a time to speak by phone.  To date, Helios has not received a response back from CSSE.

197.    Despite the passage of more than one year, Defendants have avoided participating in substantive licensing discussions with Helios and continue to infringe and/or to induce the infringement of the patents in Plaintiffs' DASH portfolio.

198.    On information and belief, Defendants' infringement has been and continues to be willful.

199.    Plaintiffs have been harmed by the Defendants' infringing activities.

## COUNT VII – INFRINGEMENT OF U.S. PATENT NO. 8,645,562

200.    The allegations set forth in the foregoing paragraphs 1 through 199 are incorporated into this Seventh Claim for Relief.

201.    On February 4, 2014, the '562 patent was duly and legally issued by the United States Patent and Trademark Office under the title "Apparatus and Method for Providing Streaming Content."  A true and correct copy of the '373 patent is attached as Exhibit 13.

202.    Ideahub is the assignee and owner of the right, title, and interest in and to the '562 patent.

203.    Helios holds the exclusive right to assert all causes of action arising under the '562 patent and the right to collect any remedies for infringement of it.

204.    Upon information and belief, Defendants have and continue to induce the direct infringement of at least claims 1, 2, 4, 5, 7, and 8 of the '562 patent by selling, offering to sell, making, using, and/or providing and causing to be used streaming media content in accordance with the MPEG-DASH standard (the "Accused Instrumentalities"), including one or more videos on demand ("VOD") such as those available at https://www.sonycrackle.com/.  The preliminary claim chart attached as Exhibit 14 sets forth an exemplary instance of such direct infringement.

205.    Upon information and belief, the Accused Instrumentalities are used to perform methods for providing media, the method comprising: receiving metadata of media, the metadata comprising one or more BaseURL elements; sending a request for a segment of the media using a Uniform Resource Locator (URL) of the segment, the URL being resolved with respect to a BaseURL element; receiving the segment; and decoding and rendering data of the media that is included in the segment, wherein the request is sent using an HTTP GET method, the BaseURL element specifies one or more common locations for segments, and the segment is one of the segments.

206.     On information and belief, the Accused Instrumentalities have been used to infringe and continue to directly infringe at least claims 1, 2, 4, 5, 7, and 8 of the '562 patent during the pendency of the '562 patent.

207.     Since at least approximately August 23, 2018 Defendants have had actual notice that they are inducing the direct infringement of the '562 patent.

208.     On information and belief, the Accused Instrumentalities are used, marketed, provided to, and/or used by or for each of Defendants' partners, clients, customers, and end users across the country and in this District.

209.     Upon information and belief, since at least approximately August 23, 2018, Defendants have induced and continue to induce others to infringe at least claims 1, 2, 4, 5, 7, and 8 of the '562 patent under 35 U.S.C. § 271(b) by, among other things, and with specific intent or willful blindness, actively aiding and abetting others to infringe, including but not limited to Defendants' partners and customers, whose use of the Accused Instrumentalities constitutes direct infringement of at least claims 1, 2, 4, 5, 7, and 8 of the '562 patent.

210.     In particular, Defendants' actions that aid and abet others such as their partners and customers to infringe include distributing the Accused Instrumentalities and providing materials and/or services related to the Accused Instrumentalities.  On information and belief, the Defendants have engaged in such actions with specific intent to cause infringement or with willful blindness to the resulting infringement because the Defendants have had actual knowledge of the '562 patent and that their acts were inducing infringement of the '562 patent since at least approximately August 23, 2018.

211.     Helios first notified Sony Entertainment of Plaintiffs' DASH patent portfolio and Defendants' infringement of the patents in that portfolio via a letter dated August 23, 2018.

212.    Helios attempted to contact Sony Entertainment about Defendants' infringement of Plaintiffs' DASH patents five additional times over the next two months but received no response.

213.    Helios next sent a letter dated January 4, 2019 to Sony Corporation of America, reminding Defendants of Plaintiffs' DASH patent portfolio and Defendants' infringement of the patents in that portfolio.  Approximately two weeks later, on or about January 23, 2019, Sony Corporation of America responded stating that the matter was under internal review.

214.    On or about February 4, 2019, Helios sent a follow-up communication providing evidence of Defendants' use of infringing technology and requesting that the parties enter into a standard non-disclosure agreement ("NDA") to facilitate free discussion between the parties.

215.    After repeated follow-up communications from Helios, on or about March 28, 2019, Sony Corporation of America sent a template NDA for Helios's review.

216.    Helios promptly sent its proposed changes to the NDA to Sony Corporation of America on or about April 8, 2019.

217.    After further repeated follow-up communications by Helios, Sony Corporation of America responded on or about May 24, 2019, stating that Crackle had become a joint venture between CSSE and Sony Pictures Television.

218.    On or about May 28, 2019, Helios expressed its preference to continue its discussions with Sony Corporation of America.

219.    On or about June 4, 2019, Sony Corporation of America again advised that Helios should contact CSSE and provided Helios with a contact person at CSSE.

220.    On or about June 12, 2019, Helios again expressed its preference to continue discussions with Sony Corporation of America.

221.     On or about August 30, 2019, Sony Corporation of America once again advised Helios to contact CSSE and confirmed that the joint venture would be responsible for any claims of past infringement of Plaintiffs' DASH patent portfolio.

222.     On or about September 10, 2019, Helios spoke directly with Sony Corporation of America, who confirmed that any past infringement and go forward license of Plaintiffs' DASH patent portfolio would be the responsibility of the joint venture, and that CSSE was aware of the licensing matter.  Sony Corporation of America provided a contact person at CSSE and advised Helios to contact them directly.

223.     On or about September 10, 2019, Helios sent a communication to CSSE, providing a history of its communications with Sony Corporation of America and requesting that the parties enter into a standard NDA to facilitate free discussion between the parties.

224.     On or about September 18, 2019, Helios again sent a communication to CSSE, including a copy of Helios's letter to Sony Corporation of America dated January 7, 2019, and requested a time to speak by phone.  To date, Helios has not received a response back from CSSE.

225.     Despite the passage of more than one year, Defendants have avoided participating in substantive licensing discussions with Helios and continue to infringe and/or to induce the infringement of the patents in Plaintiffs' DASH portfolio.

226.     On information and belief, Defendants' infringement has been and continues to be willful.

227.     Plaintiffs have been harmed by the Defendants' infringing activities.

### **COUNT VIII – INFRINGEMENT OF U.S. PATENT NO. 8,909,805**

228.     The allegations set forth in the foregoing paragraphs 1 through 227 are incorporated into this Eighth Claim for Relief.

229.    On December 9, 2014, the '805 patent was duly and legally issued by the United States Patent and Trademark Office under the title "Apparatus and Method for Providing Streaming Content."  A true and correct copy of the '805 patent is attached as Exhibit 15.

230.    Ideahub is the assignee and owner of the right, title, and interest in and to the '805 patent.

231.    Helios holds the exclusive right to assert all causes of action arising under the '805 patent and the right to collect any remedies for infringement of it.

232.    Upon information and belief, Defendants have and continue to induce the direct infringement of at least claims 1, 2, and 3 of the '805 patent by selling, offering to sell, making, using, and/or providing and causing to be used streaming media content in accordance with the MPEG-DASH standard (the "Accused Instrumentalities"), including one or more videos on demand ("VOD") such as those available at https://www.sonycrackle.com/.  The preliminary claim chart attached as Exhibit 16 sets forth an exemplary instance of such direct infringement.

233.    Upon information and belief, the Accused Instrumentalities are used to perform methods for providing media, the method comprising: receiving metadata of media, the metadata comprising one or more periods; processing the received metadata and extracting information included in the metadata, wherein the metadata includes a range attribute; requesting a segment suitable for a specific interval based on a request for bytes of a resource indicated by a URL that are designated by the range attribute; accessing segments of the media based on information provided by the metadata; decoding and rendering data of the media that is included in the segments; wherein each of the periods comprises one or more representations of the media, wherein each of the representations starts from a beginning point of a period including each of the representation and continues to an ending point of the period, and comprises one or more

segments; and wherein determining the start of a first period among one or more period comprises: when a start attribute exists in the first period element of the first period, a start time of the first period is equivalent to a value of the start attribute, when a start attribute does not exist in the first period element of the first period, and when a second period element of the second period includes a duration attribute, the start time of the first period is obtained by adding a value of the duration attribute of the second period element to a start time of the second period, and when a start attribute does not exist in the first period element of the first period, and when the first period is the first of the one or more periods, the start time of the first period is zero.

234.    On information and belief, the Accused Instrumentalities have been used to infringe and continue to directly infringe at least claims 1, 2, and 3 of the '805 patent during the pendency of the '805 patent.

235.    Since at least approximately August 23, 2018 Defendants have had actual notice that they are inducing the direct infringement of the '805 patent.

236.    On information and belief, the Accused Instrumentalities are used, marketed, provided to, and/or used by or for each of Defendants' partners, clients, customers, and end users across the country and in this District.

237.    Upon information and belief, since at least approximately August 23, 2018, Defendants have induced and continue to induce others to infringe at least claims 1, 2, and 3 of the '805 patent under 35 U.S.C. § 271(b) by, among other things, and with specific intent or willful blindness, actively aiding and abetting others to infringe, including but not limited to Defendants' partners and customers, whose use of the Accused Instrumentalities constitutes direct infringement of at least claims 1, 2, and 3 of the '805 patent.

238.    In particular, Defendants' actions that aid and abet others such as their partners and customers to infringe include distributing the Accused Instrumentalities and providing materials and/or services related to the Accused Instrumentalities.  On information and belief, the Defendants have engaged in such actions with specific intent to cause infringement or with willful blindness to the resulting infringement because the Defendants have had actual knowledge of the '805 patent and that their acts were inducing infringement of the '805 patent since at least approximately August 23, 2018.

239.    Helios first notified Sony Entertainment of Plaintiffs' DASH patent portfolio and Defendants' infringement of the patents in that portfolio via a letter dated August 23, 2018.

240.    Helios attempted to contact Sony Entertainment about Defendants' infringement of Plaintiffs' DASH patents five additional times over the next two months but received no response.

241.    Helios next sent a letter dated January 4, 2019 to Sony Corporation of America, reminding Defendants of Plaintiffs' DASH patent portfolio and Defendants' infringement of the patents in that portfolio.  Approximately two weeks later, on or about January 23, 2019, Sony Corporation of America responded stating that the matter was under internal review.

242.    On or about February 4, 2019, Helios sent a follow-up communication providing evidence of Defendants' use of infringing technology and requesting that the parties enter into a standard non-disclosure agreement ("NDA") to facilitate free discussion between the parties.

243.    After repeated follow-up communications from Helios, on or about March 28, 2019, Sony Corporation of America sent a template NDA for Helios's review.

244.    Helios promptly sent its proposed changes to the NDA to Sony Corporation of America on or about April 8, 2019.

245.     After further repeated follow-up communications by Helios, Sony Corporation of America responded on or about May 24, 2019, stating that Crackle had become a joint venture between CSSE and Sony Pictures Television.

246.     On or about May 28, 2019, Helios expressed its preference to continue its discussions with Sony Corporation of America.

247.     On or about June 4, 2019, Sony Corporation of America again advised that Helios should contact CSSE and provided Helios with a contact person at CSSE.

248.     On or about June 12, 2019, Helios again expressed its preference to continue discussions with Sony Corporation of America.

249.     On or about August 30, 2019, Sony Corporation of America once again advised Helios to contact CSSE and confirmed that the joint venture would be responsible for any claims of past infringement of Plaintiffs' DASH patent portfolio.

250.     On or about September 10, 2019, Helios spoke directly with Sony Corporation of America, who confirmed that any past infringement and go forward license of Plaintiffs' DASH patent portfolio would be the responsibility of the joint venture, and that CSSE was aware of the licensing matter.  Sony Corporation of America provided a contact person at CSSE and advised Helios to contact them directly.

251.     On or about September 10, 2019, Helios sent a communication to CSSE, providing a history of its communications with Sony Corporation of America and requesting that the parties enter into a standard NDA to facilitate free discussion between the parties.

252.     On or about September 18, 2019, Helios again sent a communication to CSSE, including a copy of Helios's letter to Sony Corporation of America dated January 7, 2019, and

requested a time to speak by phone.  To date, Helios has not received a response back from CSSE.

253.    Despite the passage of more than one year, Defendants have avoided participating in substantive licensing discussions with Helios and continue to infringe and/or to induce the infringement of the patents in Plaintiffs' DASH portfolio.

254.    On information and belief, Defendants' infringement has been and continues to be willful.

255.    Plaintiffs have been harmed by the Defendants' infringing activities.

### COUNT IX – INFRINGEMENT OF U.S. PATENT NO. 9,325,558

256.    The allegations set forth in the foregoing paragraphs 1 through 255 are incorporated into this Ninth Claim for Relief.

257.    On April 26, 2016, the '558 patent was duly and legally issued by the United States Patent and Trademark Office under the title "Apparatus and Method for Providing Streaming Content."  A true and correct copy of the '558 patent is attached as Exhibit 17.

258.    Ideahub is the assignee and owner of the right, title, and interest in and to the '558 patent.

259.    Helios holds the exclusive right to assert all causes of action arising under the '558 patent and the right to collect any remedies for infringement of it.

260.    Upon information and belief, Defendants have and continue to induce the direct infringement of at least claims 1, 2, 3, 4, and 5 of the '558 patent by selling, offering to sell, making, using, and/or providing and causing to be used streaming media content in accordance with the MPEG-DASH standard (the "Accused Instrumentalities"), including one or more videos on demand ("VOD") such as those available at https://www.sonycrackle.com/.  The preliminary claim chart attached as Exhibit 18 sets forth an exemplary instance of such direct infringement.

261.    Upon information and belief, the Accused Instrumentalities are used to perform methods for providing media content including one or more periods, the method comprising: receiving metadata of the media content from a server, the metadata comprising a minBufferTime attribute indicating a minimum amount of initially buffered media content that is required to ensure playout of the media content, the minBufferTime attribute being defined in segment unit, wherein the metadata  is a media presentation description (MPD) that provides descriptive information that enables a client to select one or more representations; receiving the media content from the server, and buffering the received media content by at least the minimum amount; and playing back the media content, wherein the minBufferTime attribute relates to the one or more periods, and wherein the minBufferTime attribute relates to providing a minimum amount of initially buffered media at a beginning of a media presentation, at a beginning of the one or more periods of the media presentation, or at any random access point of the media presentation.

262.    On information and belief, the Accused Instrumentalities have been used to infringe and continue to directly infringe at least claims 1, 2, 3, 4, and 5 of the '558 patent during the pendency of the '558 patent.

263.    Since at least approximately August 23, 2018 Defendants have had actual notice that they are inducing the direct infringement of the '558 patent.

264.    On information and belief, the Accused Instrumentalities are used, marketed, provided to, and/or used by or for each of Defendants' partners, clients, customers, and end users across the country and in this District.

265.    Upon information and belief, since at least approximately August 23, 2018, Defendants have induced and continue to induce others to infringe at least claims 1, 2, 3, 4, and 5

of the '558 patent under 35 U.S.C. § 271(b) by, among other things, and with specific intent or willful blindness, actively aiding and abetting others to infringe, including but not limited to Defendants' partners and customers, whose use of the Accused Instrumentalities constitutes direct infringement of at least claims 1, 2, 3, 4, and 5 of the '558 patent.

266.    In particular, Defendants' actions that aid and abet others such as their partners and customers to infringe include distributing the Accused Instrumentalities and providing materials and/or services related to the Accused Instrumentalities.  On information and belief, the Defendants have engaged in such actions with specific intent to cause infringement or with willful blindness to the resulting infringement because the Defendants have had actual knowledge of the '558 patent and that their acts were inducing infringement of the '558 patent since at least approximately August 23, 2018.

267.    Helios first notified Sony Entertainment of Plaintiffs' DASH patent portfolio and Defendants' infringement of the patents in that portfolio via a letter dated August 23, 2018.

268.    Helios attempted to contact Sony Entertainment about Defendants' infringement of Plaintiffs' DASH patents five additional times over the next two months but received no response.

269.    Helios next sent a letter dated January 4, 2019 to Sony Corporation of America, reminding Defendants of Plaintiffs' DASH patent portfolio and Defendants' infringement of the patents in that portfolio.  Approximately two weeks later, on or about January 23, 2019, Sony Corporation of America responded stating that the matter was under internal review.

270.    On or about February 4, 2019, Helios sent a follow-up communication providing evidence of Defendants' use of infringing technology and requesting that the parties enter into a standard non-disclosure agreement ("NDA") to facilitate free discussion between the parties.

271.    After repeated follow-up communications from Helios, on or about March 28, 2019, Sony Corporation of America sent a template NDA for Helios's review.

272.    Helios promptly sent its proposed changes to the NDA to Sony Corporation of America on or about April 8, 2019.

273.    After further repeated follow-up communications by Helios, Sony Corporation of America responded on or about May 24, 2019, stating that Crackle had become a joint venture between CSSE and Sony Pictures Television.

274.    On or about May 28, 2019, Helios expressed its preference to continue its discussions with Sony Corporation of America.

275.    On or about June 4, 2019, Sony Corporation of America again advised that Helios should contact CSSE and provided Helios with a contact person at CSSE.

276.    On or about June 12, 2019, Helios again expressed its preference to continue discussions with Sony Corporation of America.

277.    On or about August 30, 2019, Sony Corporation of America once again advised Helios to contact CSSE and confirmed that the joint venture would be responsible for any claims of past infringement of Plaintiffs' DASH patent portfolio.

278.    On or about September 10, 2019, Helios spoke directly with Sony Corporation of America, who confirmed that any past infringement and go forward license of Plaintiffs' DASH patent portfolio would be the responsibility of the joint venture, and that CSSE was aware of the licensing matter.  Sony Corporation of America provided a contact person at CSSE and advised Helios to contact them directly.

279.    On or about September 10, 2019, Helios sent a communication to CSSE, providing a history of its communications with Sony Corporation of America and requesting that the parties enter into a standard NDA to facilitate free discussion between the parties.

280.    On or about September 18, 2019, Helios again sent a communication to CSSE, including a copy of Helios's letter to Sony Corporation of America dated January 7, 2019, and requested a time to speak by phone.  To date, Helios has not received a response back from CSSE.

281.    Despite the passage of more than one year, Defendants have avoided participating in substantive licensing discussions with Helios and continue to infringe and/or to induce the infringement of the patents in Plaintiffs' DASH portfolio.

282.    On information and belief, Defendants' infringement has been and continues to be willful.

283.    Plaintiffs have been harmed by the Defendants' infringing activities.

### COUNT X – INFRINGEMENT OF U.S. PATENT NO. 9,467,493

284.    The allegations set forth in the foregoing paragraphs 1 through 283 are incorporated into this Tenth Claim for Relief.

285.    On October 11, 2016, the '493 patent was duly and legally issued by the United States Patent and Trademark Office under the title "Apparatus and Method for Providing Streaming Content."  A true and correct copy of the '493 patent is attached as Exhibit 19.

286.    Ideahub is the assignee and owner of the right, title, and interest in and to the '493 patent.

287.    Helios holds the exclusive right to assert all causes of action arising under the '493 patent and the right to collect any remedies for infringement of it.

288.     Upon information and belief, Defendants have and continue to induce the direct infringement of at least claims 1, 2, and 4 of the '493 patent by selling, offering to sell, making, using, and/or providing and causing to be used streaming media content in accordance with the MPEG-DASH standard (the "Accused Instrumentalities"), including one or more videos on demand ("VOD") such as those available at https://www.sonycrackle.com/.  The preliminary claim chart attached as Exhibit 20 sets forth an exemplary instance of such direct infringement.

289.     Upon information and belief, the Accused Instrumentalities are used to perform methods for providing media, the methods comprising: receiving metadata of media, the metadata comprising one or more BaseURL elements; sending a request for a segment of the media using a Uniform Resource Locator (URL) of the segment, the URL being resolved with respect to a BaseURL element; receiving the segment; and decoding and rendering data of the media that is included in the segment, wherein the metadata selectively comprises a sourceURL attribute of the segment, and wherein, when the metadata selectively comprises the sourceURL attribute of the segment, a BaseURL element among the BaseURL elements is mapped to the sourceURL attribute, so that the URL is generated.

290.     On information and belief, the Accused Instrumentalities have been used to infringe and continue to directly infringe at least claims 1, 2, and 4 of the '493 patent during the pendency of the '493 patent.

291.     Since at least approximately August 23, 2018 Defendants have had actual notice that they are inducing the direct infringement of the '493 patent.

292.     On information and belief, the Accused Instrumentalities are used, marketed, provided to, and/or used by or for each of Defendants' partners, clients, customers, and end users across the country and in this District.

293.     Upon information and belief, since at least approximately August 23, 2018, Defendants have induced and continue to induce others to infringe at least claims 1, 2, and 4 of the '493 patent under 35 U.S.C. § 271(b) by, among other things, and with specific intent or willful blindness, actively aiding and abetting others to infringe, including but not limited to Defendants' partners and customers, whose use of the Accused Instrumentalities constitutes direct infringement of at least claims 1, 2, and 4 of the '493 patent.

294.     In particular, Defendants' actions that aid and abet others such as their partners and customers to infringe include distributing the Accused Instrumentalities and providing materials and/or services related to the Accused Instrumentalities.  On information and belief, the Defendants have engaged in such actions with specific intent to cause infringement or with willful blindness to the resulting infringement because the Defendants have had actual knowledge of the '493 patent and that their acts were inducing infringement of the '493 patent since at least approximately August 23, 2018.

295.     Helios first notified Sony Entertainment of Plaintiffs' DASH patent portfolio and Defendants' infringement of the patents in that portfolio via a letter dated August 23, 2018.

296.     Helios attempted to contact Sony Entertainment about Defendants' infringement of Plaintiffs' DASH patents five additional times over the next two months but received no response.

297.     Helios next sent a letter dated January 4, 2019 to Sony Corporation of America, reminding Defendants of Plaintiffs' DASH patent portfolio and Defendants' infringement of the patents in that portfolio.  Approximately two weeks later, on or about January 23, 2019, Sony Corporation of America responded stating that the matter was under internal review.

298.     On or about February 4, 2019, Helios sent a follow-up communication providing evidence of Defendants' use of infringing technology and requesting that the parties enter into a standard non-disclosure agreement ("NDA") to facilitate free discussion between the parties.

299.     After repeated follow-up communications from Helios, on or about March 28, 2019, Sony Corporation of America sent a template NDA for Helios's review.

300.     Helios promptly sent its proposed changes to the NDA to Sony Corporation of America on or about April 8, 2019.

301.     After further repeated follow-up communications by Helios, Sony Corporation of America responded on or about May 24, 2019, stating that Crackle had become a joint venture between CSSE and Sony Pictures Television.

302.     On or about May 28, 2019, Helios expressed its preference to continue its discussions with Sony Corporation of America.

303.     On or about June 4, 2019, Sony Corporation of America again advised that Helios should contact CSSE and provided Helios with a contact person at CSSE.

304.     On or about June 12, 2019, Helios again expressed its preference to continue discussions with Sony Corporation of America.

305.     On or about August 30, 2019, Sony Corporation of America once again advised Helios to contact CSSE and confirmed that the joint venture would be responsible for any claims of past infringement of Plaintiffs' DASH patent portfolio.

306.     On or about September 10, 2019, Helios spoke directly with Sony Corporation of America, who confirmed that any past infringement and go forward license of Plaintiffs' DASH patent portfolio would be the responsibility of the joint venture, and that CSSE was aware of the

licensing matter.  Sony Corporation of America provided a contact person at CSSE and advised Helios to contact them directly.

307.    On or about September 10, 2019, Helios sent a communication to CSSE, providing a history of its communications with Sony Corporation of America and requesting that the parties enter into a standard NDA to facilitate free discussion between the parties.

308.    On or about September 18, 2019, Helios again sent a communication to CSSE, including a copy of Helios's letter to Sony Corporation of America dated January 7, 2019, and requested a time to speak by phone.  To date, Helios has not received a response back from CSSE.

309.    Despite the passage of more than one year, Defendants have avoided participating in substantive licensing discussions with Helios and continue to infringe and/or to induce the infringement of the patents in Plaintiffs' DASH portfolio.

310.    On information and belief, Defendants' infringement has been and continues to be willful.

311.    Plaintiffs have been harmed by the Defendants' infringing activities.

## STATEMENT REGARDING FRAND OBLIGATION

312.    Plaintiffs contend that, pursuant to relevant ISO and IEC guidelines, bylaws, and policies, many of the claims of the Asserted Patents are subject to Fair, Reasonable, and Non-Discriminatory ("FRAND") licensing obligations to willing licensees.

313.    To the extent Defendants refuse to willingly take a license under such claims of the Asserted Patents under FRAND terms, Plaintiffs reserve the right to treat Defendants as unwilling licensees, such that Plaintiffs would not be bound by any FRAND licensing obligation for purposes of this action or any license to Defendants.  Accordingly, Plaintiffs seek the

maximum available reasonable royalty damages to compensate for Defendants' infringing activities.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all issues triable as such.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment for itself and against Defendants as follows:

A.      An adjudication that the Defendants have infringed each of the Asserted Patents;

B.      An award of damages to be paid by Defendants adequate to compensate Plaintiffs for Defendants' past infringement of each of the Asserted Patents, and any continuing or future infringement through the date such judgment is entered, including interest, costs, expenses and an accounting of all infringing acts including, but not limited to, those acts not presented at trial;

C.      A declaration that this case is exceptional under 35 U.S.C. § 285, and an award of Plaintiffs' reasonable attorneys' fees; and

D.      An award to Plaintiffs of such further relief at law or in equity as the Court deems just and proper.

Dated: September 27, 2019                    DEVLIN LAW FIRM LLC

                                             */s/ Timothy Devlin*
                                             Timothy Devlin (No. 4241)
                                             1526 Gilpin Avenue
                                             Wilmington, Delaware 19806
                                             Telephone: (302) 449-9010
                                             Facsimile: (302) 353-4251
                                             tdevlin@devlinlawfirm.com

                                             *Attorneys for Plaintiffs Helios Streaming, LLC,*
                                             *and Ideahub, Inc.*