### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AMY PATRICK, M.D., ) | |
| ) | |
| Plaintiff, ) | C.A. No. _____ |
| v. ) | |
| ) | |
| RELIANCE STANDARD LIFE ) | |
| INSURANCE COMPANY, ) | |
| ) | |
| Defendant. ) | |

## COMPLAINT

Plaintiff, Amy Patrick, M.D. ("Dr. Patrick"), by and through her undersigned counsel, for her Complaint against Defendant, Reliance Standard Life Insurance Company ("Reliance"), alleges as follows:

## THE PARTIES

1. Plaintiff, Dr. Patrick, is a citizen of the State of Maryland, residing in Anne Arundel County.

2. Defendant, Reliance, is an insurance company with a principal office in the Commonwealth of Pennsylvania. Reliance is registered with the Insurance Commissioner for the State of Delaware for the purpose of transacting business in Delaware. Pursuant to 18 *Del. C.* §§ 524 & 525, the Delaware Insurance Commissioner is the agent authorized to accept service of process for Reliance.

## JURISDICTION AND VENUE

3. This action is brought on behalf of Plaintiff, pursuant to the Employee Retirement income Security Act of 1974, 29 U.S.C. § 1001 *et. seq.* ("ERISA").

{01504845;v1 }

4. Jurisdiction is premised upon federal question jurisdiction pursuant to 28 U.S.C. § 1131. Specifically, this Court has jurisdiction over this action pursuant to 29 U.S.C. § 1132(e), the jurisdictional provision of ERISA.

5. Venue of this action is properly before this Court, pursuant to 28 U.S.C. § 1391(b) and 29 U.S.C. § 1132(e)(2).

## FACTUAL BACKGROUND

6. At all relevant times, Plaintiff, Dr. Patrick, was employed as a physician by Mid-Atlantic Consultants, P.A. ("Mid-Atlantic G.I."), a physician practice group in New Castle County, Delaware. At all relevant times, Dr. Patrick has also been a shareholder of Mid-Atlantic G.I.

7. At all relevant times, Plaintiff, as an employee of Mid-Atlantic G.I., was eligible for, and participated in, an employee welfare benefit plan offered by Mid-Atlantic G.I., which provided her with long term disability insurance through a Long-Term Disability Insurance Policy, Policy No. 116813 ("LTD Policy"). A copy of said LTD Policy, which was effective September 1, 2007, is attached hereto, incorporated herein by reference and marked as Exhibit "A".

8. Reliance issued and administers the LTD Policy, which was designed to provide disability insurance benefits to any covered employees of Mid-Atlantic G.I., including Plaintiff, who became disabled and qualified for coverage under the policy.

9. Since the LTD Policy is a policy established and maintained by Mid-Atlantic G.I. for the purpose of providing disability insurance, it classifies as an employee welfare benefit plan governed by ERISA ("Plan"). Mid-Atlantic G.I.'s Plan is located in the State of Delaware.

10. At all relevant times, Defendant, Reliance, has served as the administrator and fiduciary of the LTD Policy and Plan.

11. The LTD Policy provides that Reliance will pay a "Monthly Benefit" if an "insured": "(1) is Totally Disabled as the result of a Sickness or Injury covered by this Policy; (2) is under the regular care of a Physician; (3) has completed the Elimination Period [defined as 90 consecutive days of Total Disability]; and (4) submits satisfactory proof of Total Disability to us."

12. The Monthly Benefit payable by Defendant under the LTD Policy and Mid-Atlantic G.I.'s Plan is calculated at 60 percent of pre-disability earnings, subject to offset by certain other income benefits.

13. The LTD Policy provides benefits for an "Insured" under the following circumstances:

> "**Totally Disabled" and "Total Disability"** mean that as a result of an Injury or Sickness during the elimination period and thereafter, an insured cannot perform the material duties of his/her Regular Occupation."
>
> **'Partially Disabled'** and **'Partial Disability'** mean that as a result of an Injury or Sickness, an Insured is capable of performing the material duties of his/her Regular Occupation on a part-time basis or some of the material duties on a full-time basis. An Insured who is Partially Disabled will be considered totally Disabled, except during the Elimination Period [defined as 90 consecutive days of Total Disability] . . . ."

14. The LTD Policy defines "Regular Occupation means the occupation the Insured is routinely performing when Total Disability begins. We will look at the Insured's occupation as it is normally performed in the national economy, and not the unique duties performed for a specific employer in a specific locale."

15. On or about July 10, 2008, Dr. Patrick became disabled due to an injury under the LTD Policy. As a result, Dr. Patrick applied for and began receiving monthly benefit payments from Reliance in October, 2008.

16. Dr. Patrick suffered from a spinal nerve palsy secondary to cervical lymph node biopsy and suffered trapezius atrophy to both the upper and middle parts of her lower right trapezius muscles. Also, Dr. Patrick has lateral scapular displacement.

17. On July 9, 2008, Louis Bigliani, M.D. ("Dr. Bigliani"), an orthopedic surgeon specializing in shoulder surgery and formerly the Chairman of Orthopedic Surgery of Columbia University College of Physicians and Surgeons, performed a right levator scapula and Rhomboid muscle transfer to repair Dr. Patrick's injury.

18. Dr. Bigliani determined Dr. Patrick was partially permanently disabled and would be limited to practicing her occupation on a part-time basis. As late as May 23, 2013, Dr. Bigliani noted Dr. Patrick's left upper extremity was fatiguing while working part-time.

19. Reliance's medical staff determined as of March 24, 2010, Dr. Patrick's recovery had plateaued; she was not expected to regain full function of her right arm; and she was limited to part-time light or full-time sedentary work.

20. Reliance's claims department determined in August 9, 2013, Dr. Patrick suffered from a permanent partial impairment rendering her eligible for benefits until her sixty-seventh birthday pursuant to the LTD Policy.

21. Reliance did not request any follow-up medical information from Dr. Patrick or her physicians until December 2018.

22. By December 2018, Dr. Bigliani retired and Charles Jobin, M.D. ("Dr. Jobin"), an

orthopedic surgeon specializing in shoulder injuries at Columbia University College of Physicians and Surgeons, became Dr. Patrick's treating orthopedic surgeon. Dr. Jobin confirmed that Dr. Patrick suffered from a permanent partial disability of her upper right extremity due to her spinal accessary nerve injury and levator scapular Rhomboid transfer.

23. Secondary to Dr. Patrick's permanent injury, she suffered from scapulothoric bursitis of the left shoulder. Dr. Jobin periodically treated this condition with injections. When Dr. Patrick's scapulothoric bursitis of her left shoulder flared up, it would further limit her ability to perform her occupation on a part-time basis. Once Dr. Jobin performed an injection of Dr. Patrick's left shoulder, she was able to return to her part-time practice.

24. Prior to December 2018, Dr. Jobin had not been involved in Dr. Patrick's receipt of LTD benefits under her Reliance Group Disability Policy and had not completed or submitted any Attending Physician Statements or other information to Reliance.

25. In December 2018, Dr. Jobin was provided with an Attending Physician's Statement to complete and send to Reliance.

26. Dr. Jobin only addressed Dr. Patrick's left scapulothoracic bursitis symptoms and not her right trapezius muscle paralysis when he completed and returned the Attending Physician's Statement. Dr. Jobin noted in the Attending Physician's Statement that Dr. Patrick "May Return to Work No Restrictions". This statement was limited to Dr. Patrick's scapulothoric bursitis of her left shoulder. As Dr. Jorbin subsequently notified Reliance via a corrected Attending Physician's Statement to Reliance, this statement was not intended by Dr. Jobin to mean Dr. Patrick no longer suffered from a permanent disabling injury or that she could return to full-time work.

27. On January 22, 2019, Reliance notified Dr. Patrick they were terminating her LTD disability benefits based upon Dr. Jobin's Attending Physician's Statement.

28. Dr. Patrick immediately notified Reliance that Dr. Jobin had not released her to return to work full-time work and his comment was only limited to her scapulothoric bursitis of her left shoulder.

29. On February 8, 2019, Dr. Jobin tendered another Attending Physician's Statement to Reliance, which addressed Dr. Patrick's right shoulder muscle transfer and noted Dr. Patrick had been partially disabled from 2009 until the present (due to this condition), which restricted her work hours and the number of procedures.

30. Despite Reliance's prior determination in 2013 that Dr. Patrick was permanently partially disabled under the LTD Policy until her sixty-seventh birthday and Dr. Jobin's corrected Attending Physician's Statement, Reliance refused to change its claim determination and continued to terminate Dr. Patrick's LTD benefits. Reliance refusal to change its claim determination and decision to terminate Dr. Patrick's LTD benefits was financially self-serving, unsupported by medical evidence, and frivolous.

31. Thereafter, Dr. Patrick exhausted her administrative remedies and appealed the termination of her LTD benefits on appeal. Reliance refused to change its previous claim's determination and ultimately terminated Dr. Patrick's LTD benefits in an unreasonable, arbitrary and capricious manner despite any improvement in her disabling condition, contrary to its previous decisions and contrary to the wealth of medical evidence establishing Dr. Patrick could only perform her regular occupation on a part-time basis. Reliance also ignored the wealth of medical evidence, cherry picked information, arbitrarily reclassified Dr. Patrick's occupation and

occupational duties in an effort to support its frivolous determination to terminate Dr. Patrick's LTD benefits in an arbitrary, capricious and unreasonable manner.

## ERISA CLAIMS

32. Plaintiff repeats and realleges each of the foregoing allegations as if fully set forth herein.

33. The LTD Policy issued by Reliance constitutes an employee benefit plan pursuant to the Employees Retirement Income Security Act, 29 U.S.C. § 1001 *et. seq.*

34. Reliance was and is the administrator and fiduciary of the LTD Policy as well as the insurer and party obligated to pay benefits due under the policy.

35. At all relevant times, Plaintiff was a beneficiary of the LTD Policy and Plan.

36. Since July 2008, Plaintiff has been disabled within the meaning of the LTD Policy so as to be entitled to disability benefits.

37. Defendant's decisions to deny Plaintiff her benefits are unsupported by substantial evidence, erroneous and unreasonable.

38. Reliance's actions entitle Dr. Patrick to an award of reasonable attorneys' fees, interest and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Amy Patrick, M.D., respectfully requests the Court to enter judgment against the Defendant, Reliance Standard Life Insurance Company, and determine the Defendant has erroneously terminated and denied the Plaintiff benefits to which she is entitled, and compel Defendant to pay Plaintiff all disability benefits due, past and future, and award all appropriate relief pursuant to ERISA, 29 U.S.C.§ 1001, *et. seq.*, including reasonable attorney's

fees, interest, costs and for all other just and proper relief.

                ASHBY & GEDDES

                */s/ Randall E. Robbins*
                Randall E. Robbins (#2059)
                Randall J. Teti (#6334)
                500 Delaware Ave.
                P.O. Box 1150
                Wilmington, DE   19899
                Phone:   (302) 654-1888
                Fax:   (302) 654-2067
                rrobbins@ashbygeddes.com
                rteti@ashbygeddes.com

*Of Counsel*:

Robert E. Saint, Esq.
*Pro Hac Vice Pending*
Emswiller, Williams, Noland & Clarke, LLC
8500 Keystone Crossing, Suite 500
Indianapolis, IN   46240-2461
Phone:   (317) 257-8787
Fax:   (317) 257-9042
Email: rsaint@ewnc-law.com

November 7, 2019