IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **ZIG ZAG INNOVATIONS, LLC,**<br><br>Plaintiff,<br><br>v.<br><br>**LEVITON MANUFACTURING CO., INC.,**<br><br>Defendant. | CIVIL ACTION NO.<br><br>JURY TRIAL DEMANDED |

### PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Zig Zag Innovations, LLC ("Plaintiff"), by and through its undersigned counsel, files this Original Complaint against Defendant Leviton Manufacturing Co., Inc. ("Defendant") as follows:

### NATURE OF THE ACTION

1.  This is an action for violation of 35 U.S.C. §§271(a) and 35 U.S.C. §§271(b). This is a patent infringement action to stop Defendant's infringement of United States Patent No. 8,818,532 ("the '532 patent") entitled "System and Method for Selectively Controlling and Monitoring Receptacles and Fixtures Connected to a Power Circuit in a Building" A true and correct copy of the '532 patent is attached hereto as Exhibit A.  Plaintiff is the owner by assignment of the '532 patent.  Plaintiff seeks monetary damages and injunctive relief.

### PARTIES

2.  Plaintiff is a limited liability company having a principal place of business located at 611 Annin Street, Philadelphia, Pennsylvania 19147.

3.  Upon information and belief, Defendant is a corporation organized and existing under the laws of the State of Delaware with a principal place of business located at 201 N. Service Rd. Melville, New York 11747-3138. Defendant can be served with process by serving

Corporation Service Company D/B/A CSC Lawyers Inco 211 E. 7th Street Suite 620 Austin, Texas 78701. Defendant Leviton Manufacturing Co., Inc. maintains brick and mortar offices all over the country including but not limited to the District of Delaware some of which are located at, 201 N. Service Rd. Melville, New York 11747-3138.

## JURISDICTION AND VENUE

4. This is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §101 et seq., including 35 U.S.C. §§271 and 281-285. This Court has exclusive subject matter jurisdiction over this case for patent infringement under 28 U.S.C. §§1331 and 1338.

5. Venue is proper in this Court pursuant to 28 U.S.C. §1400(b). Leviton Manufacturing Co., Inc. is subject to personal jurisdiction in this district. Additionally, Leviton Manufacturing Co. Inc. is registered under the laws of Delaware. Upon information and belief, Leviton Manufacturing Co., Inc. has individually transacted business in this district and/or committed acts of patent infringement in this district.

6. This Court has personal jurisdiction over Leviton Manufacturing Co., Inc. Leviton Manufacturing Co., Inc. has conducted and does conduct business within the District of Delaware. Leviton Manufacturing Co., Inc., directly or through subsidiaries or intermediaries (including distributors, retailers, and others), ships, distributes, offers for sale, sells, and/or advertises (including through its web pages) its products and services (including products and/or services that infringe the '532 patent, as described more particularly below) in the United States, the State of Delaware, and the District of Delaware. Leviton Manufacturing Co., Inc., directly and through subsidiaries or intermediaries (including distributors, retailers, and others), has purposefully and voluntarily placed one or more infringing products and/or services, as described

below, into the stream of commerce with the expectation that they will be purchased and/or used by consumers in the District of Delaware. These infringing products and/or services have been and continue to be purchased and/or used by consumers in the District of Delaware. Leviton Manufacturing Co., Inc. has committed acts of patent infringement within the State of Delaware and, more particularly, within the District of Delaware.

## THE ASSERTED PATENTS

7. This lawsuit asserts causes of action for infringement of United States Patent No. 8,818,532.

8. On August 26, 2014, the U.S. Patent and Trademark Office duly and legally issued U.S. Patent No. 8,818,532 ("the '532 Patent") entitled, "System and Method for Selectively Controlling and Monitoring Receptables and Fixtures Connected to a Power Circuit in a Building" to Ricardo Vasquez and assigned to Plaintiff, Zig Zag Innovations, LLC. Zig Zag Innovations, LLC is the owner by assignment of the '532 patent and holds all right, title and interest to the '532 Patent. A true and correct copy of the '532 patent is attached as Exhibit A.

9. Claim 1 of the '532 patent describes, among other things:

In a building having multiple circuits wired to a central circuit breaker, a system for adding controls to a targeted circuit from among said multiple circuits, said system comprising:

> a plurality of outlet assemblies, wherein each of said plurality of outlet assemblies has a receptacle, an on/off switch, and a selectively changeable outlet identification code, wherein said on/off switch is configurable between an on condition and an off condition;
> an electrical power cable extending from said central circuit breaker to said plurality of outlet assemblies, wherein said electrical power cable supplies electrical current to said plurality of outlet assemblies, and wherein said electrical current is connected to said receptacle in each of said plurality of outlet assemblies only when it's said on/off switch is in said on condition; and
> a control unit coupled to said electrical power cable at a point between said plurality of outlet assemblies and said central circuit breaker, wherein said control unit generates an addressed control signal within said electrical power cable, wherein said addressed control signal selectively controls said on/off switch in any of said

plurality of outlet assemblies that have said outlet identification code that is addressed by said addressed control signal.

10. Claim 9 of the '532 patent describes, among other things:

An area circuit within a building comprising:

an outlet assembly having a receptacle, an on/off switch, and a selectively changeable outlet identification code, wherein said on/off switch is configurable between an on condition and an off condition;

a control unit coupled to said outlet assembly by an electrical power cable, wherein said control unit generates an addressed control signal within said electrical power cable that selectively controls said on/off switch in said outlet assembly only when said outlet identification code is accurately addressed by said addressed control signal.

11. The '532 Patent is owned by Zig Zag Innovations, LLC and the technology covered by said patent was developed by Zig Zag Innovations, LLC, its predecessors, and/or related companies. To the extent 35 U.S.C. §287 is determined to be applicable, Plaintiff is informed and believes its requirements have been satisfied with respect to the '532 patent and is entitled to recover pre-suit damages.

12. The Asserted Patent is valid and enforceable.

**CONTROLLING AND MONITORING FIXTURES AND RECEPTACLES CONNECTED TO A POWER CIRCUIT IN A BUILDING**

13. Transmitting data through power lines has been used for computer networking and even for telephone communication wiring. Data transmission through power cables however, has primarily been used to control smart outlets, wherein the outlets can be activated or deactivated using a data transmission.

14. In such systems, the control signals are typically generated using a desktop computer. The desktop computer uses a signal converter to convert command signals into data

signals that can travel through the power lines. Since data is being transmitted through active power lines, the installation and expense of installing such systems is considerable.

15. Furthermore, commercially available smart outlets are very expensive. This is due to the electronics required within the smart outlet to identify the smart outlet to the overall system. A typical home may have over one hundred outlets and dozens of lighting fixtures.

16. Being able to place an expensive smart outlet into such a multitude has made such prior art systems too expensive and too complex for use by the average home owner. Accordingly, smart outlets are typically only installed by professionals in luxury homes and ultra-high energy efficient commercial buildings.

17. A need therefore, existed at the time of filing of the '532 patent for a system and method of simplifying the use of smart outlets. The '532 patent created a system so that an average homeowner can afford to use the smart outlets and have the ability to install the smart outlets throughout the home.

## COUNT I – PATENT INFRINGEMENT OF U.S. PATENT NO. 8,818,532

18. Plaintiff refers to and incorporates herein the allegations of Paragraphs 1-17 above.

19. The '532 patent was duly and legally issued by the United States Patent and Trademark Office on August 26, 2014 after full and fair examination. Plaintiff is the owner by assignment of the '532 patent and possesses all rights of recovery under the '532 patent, including the exclusive right to sue for infringement and recover past damages and obtain injunctive relief.

20. Defendant owns, uses, operates, tests, advertises, controls, sells, and/or otherwise provides systems that infringe the '532 patent. The '532 patent provides, among other things,

"an area circuit within a building comprising: (1) an outlet assembly having a receptacle; (2) an on/off switch, and a selectively changeable outlet identification code, wherein said on/off switch is configurable between an on condition and an off condition; and (3) a control unit coupled to said outlet assembly by an electrical power cable, wherein said control unit generates an addressed control signal within said electrical power cable that selectively controls said on/off switch in said outlet assembly only when said outlet identification code is accurately addressed by said addressed control signal."

21. Defendant has been and is now infringing the '532 Patent in the State of Delaware, in this judicial district, and elsewhere in the United States, by, among other things, directly and/or indirectly through intermediaries, making, using, importing, testing, providing, supplying, distributing, selling, and/or offering for sale systems (including, without limitation, the Defendant's LevNet RF Hotel Key Card Switch and LevNet RF Receivers identified herein as the "Accused Instrumentality") that provide a system for selectively controlling and monitoring receptables and fixtures connected to a power circuit in a building, covered by one or more claims of the '532 patent to the injury of Zig Zag Innovations, LLC. Defendant is directly and/or indirectly infringing, literally infringing, and/or infringing the '532 patent under the doctrine of equivalents. Defendant is thus liable for infringement of the '532 patent pursuant to 35 U.S.C. § 271.

22. Leviton Manufacturing Co., Inc. infringes claim 9 by having an area circuit within a building comprising:

> *an outlet assembly having a receptacle, an on/off switch, and a selectively changeable outlet identification code, wherein said on/off switch is configurable between an on condition and an off condition;*

| | | |
|---|---|---|
| An area circuit within a building comprising: an outlet assembly having a receptacle, an on/off switch, and a selectively changeable outlet identification code, wherein said on/off switch is configurable between an on condition and an off condition; a control unit coupled to said outlet assembly by an electrical power cable, wherein said control unit generates an addressed control signal within said electrical power cable that selectively controls said on/off switch in said outlet assembly only when said outlet identification code is accurately addressed by said addressed control signal. | **HOTEL KEY CARD SWITCH, WHITE, WSS0S-H0W:** LevNet RF Remote Switches can control an unlimited number of LevNet RF Receivers that are in range. They use no wires or batteries. Pressing the switch or inserting a hotel key card into a switch provides the energy to transmit a wireless signal that controls lights or other devices connected to LevNet RF Receivers. Wireless Switches are primarily used to control lights in businesses or homes, but they can be used to control virtually any on/off device. The unique ID of each Switch activates only the intended Receiver(s). It takes only minutes to install and configure. The Wireless Self-Powered Hotel Key Card Switch is designed to create energy saving solutions for the hospitality industry. Energy is saved by ensuring that no devices are left on when the room is not in use. |  Source: https://store.leviton.com/products/hotel-key-card-switch-white-wss0s-h0w?variant=18216141635 |
| | Analyst comment- Evidence demonstrates that LevNet RF Hotel Key Card Switch is used to control lights in businesses or home (building) by inserting hotel key card into the switch installed outside the room or restricted area. After inserting hotel key card into the switch (receptacle), RF based wireless signals are transmitted to control lights or other electrical equipment (on/off switch) connected to LevNet RF receiver. Based on the unique identification code associated with a card, the associated receiver receives the wireless signal and then controls all, or selected, outlet assembly connected with the receiver. | |
| An area circuit within a building comprising: an outlet assembly having a receptacle, an on/off switch, and a selectively changeable outlet identification code, wherein said on/off switch is configurable between an on condition and an off condition; a control unit coupled to said outlet assembly by an electrical power cable, wherein said control unit generates an addressed control signal within said electrical power cable that selectively controls said on/off switch in said outlet assembly only when said outlet identification code is accurately addressed by said addressed control signal. | • **Save energy and money:** When entering a room - a guest inserts a Key Card to make power available to selected devices; when leaving - the guest removes the Card to set devices in the room to an energy-saving "unoccupied" mode<br>• **Energy-saving hotel room controls:** Occupancy-based control of lights and devices - integrated HVAC and lighting control - and optional master ON/OFF controls<br>• **Simple wireless control systems:** Control unlimited Receivers within range - control all or only selected devices in a room - use with most room key cards | |
| | Source: https://store.leviton.com/products/hotel-key-card-switch-white-wss0s-h0w?variant=18216141635 | |

*a control unit coupled to said outlet assembly by an electrical power cable, wherein said control unit generates an addressed control signal within said electrical power cable that selectively controls said on/off switch in said outlet assembly only when said outlet identification code is accurately addressed by said addressed control signal.*

| | |
|---|---|
| An area circuit within a building comprising:<br>an outlet assembly having a receptacle, an on/off switch, and a selectively changeable outlet identification code, wherein said on/off switch is configurable between an on condition and an off condition;<br>a control unit coupled to said outlet assembly by an electrical power cable, wherein said control unit generates an addressed control signal within said electrical power cable that selectively controls said on/off switch in said outlet assembly only when said outlet identification code is accurately addressed by said addressed control signal. | <br>Source: https://www.leviton.com/en/docs/Solution_Sheet-Basic_Wireless_Lighting_Control.pdf<br><br>**Analyst comment-** Above evidence demonstrates that RF receiver unit acts as control unit to control activation/deactivation (on/off switch) of the room's electrical devices (lighting, air conditioning and TV). Control unit is connected with the outlet assembly power circuit of the loads in the room by an electrical power cable. |
| An area circuit within a building comprising:<br>an outlet assembly having a receptacle, an on/off switch, and a selectively changeable outlet identification code, wherein said on/off switch is configurable between an on condition and an off condition;<br>a control unit coupled to said outlet assembly by an electrical power cable, wherein said control unit generates an addressed control signal within said electrical power cable that selectively controls said on/off switch in said outlet assembly only when said outlet identification code is accurately addressed by said addressed control signal. | **The unique ID of each Switch activates only the intended Receiver(s).** It takes only minutes to install and configure. The Wireless Self-Powered Hotel Key Card Switch is designed to create energy saving solutions for the hospitality industry. Energy is saved by ensuring that no devices are left on when the room is not in use.<br>**Inserting a Key Card provides the energy to transmit a wireless signal to LevNet RF Receivers that control lights or other devices in the room. When entering a room, a Key Card is inserted into the switch and a wireless signal is sent to the Receivers that control the loads in the room. The individual Receivers then communicate with their corresponding loads to close the circuit. When the user exits the room and removes the Key Card from the switch, another wireless signal is sent to the Receivers to open the circuits. Receivers then disconnect power to the devices.**<br>• **Energy-saving hotel room controls:** Occupancy-based control of lights and devices - integrated HVAC and lighting control - and optional master ON/OFF controls<br>• **Simple wireless control systems:** Control unlimited Receivers within range - control all or only selected devices in a room - use with most room key cards<br>Source: https://store.leviton.com/products/hotel-key-card-switch-white-wss0s-h0w?variant=18216141635<br><br>**Analyst comment-** Evidence demonstrates that after inserting card into the switch, unique ID associated with the card is identified to activate only the intended receiver. Then, the receiver (control circuit) communicates with the corresponding loads (on/off switch) through the address control signal. The address communication signal of outlet is sent through the receiver for controlling the activation or deactivation of the outlet assembly (on/off switch) of the room electrical devices (lighting, air conditioning and TV). |

| An area circuit within a building comprising: an outlet assembly having a receptacle, an on/off switch, and a selectively changeable outlet identification code, wherein said on/off switch is configurable between an on condition and an off condition; a control unit coupled to said outlet assembly by an electrical power cable, wherein said control unit generates an addressed control signal within said electrical power cable that selectively controls said on/off switch in said outlet assembly only when said outlet identification code is accurately addressed by said addressed control signal. | Every time a card is inserted a small micro-generator produces a small electrical current that powers a built-in transmitter. This transmitter sends wireless signals that command the receiver to turn the power supply to a device on. It signals the receiver to turn the power supply off again when the card is removed.<br><br>**Compatible Devices:**<br>• 3-Wire Relay<br>• 5-Wire Relay<br>• Plug-in Dimmer/Relay<br>• 4-Channel Low Voltage Receiver<br>• Room Controller<br>• Thermostat<br>• More receivers available<br><br>Source:<br>https://www.leviton.com/sites/REST/controller/LCDownloadController/download/PK-93820-10-00-0A-W.pdf?docurl=/en/docs/PK-93820-10-00-0A-W.pdf |
|---|---|

23.     Defendant also infringes under 35 U.S.C. §271(b) by inducing infringement of the '532 patent in the State of Delaware, literally or under the doctrine of equivalents, in this judicial district, and elsewhere in the United States, by, among other things, advising, encouraging, and/or otherwise inducing others to perform the steps and/or operate the systems claimed by the '532 patent to the injury of Plaintiff.  Defendant actively instructs their customers to use the Accused Instrumentality in a way that infringes the '532 patent.  Since at least the filing date of this Complaint, Defendant has had knowledge of the '532 patent, and by continuing the actions described herein, has specific intent to induce infringement of the '532 patent pursuant to 35 U.S.C. §271(b).

24.     Specifically, Defendant advertises the Accused Instrumentality to its customers, and instructs its customers to operate the Accused Instrumentality in a way that infringes, such that when Defendant's customers follow Defendant's instructions, the '532 patent is infringed.

25.     Since at least the filing date of the Original Complaint, Defendant has had knowledge of the '532 patent pursuant to 35 U.S.C. §271(b), and by continuing the actions described above, by continuing to sell the Accused Instrumentality and instruct their customers to use the Accused Instrumentality in an infringing manner, Defendant has had specific intent to induce infringement of the '532 patent pursuant to 35 U.S.C. §271(b).

9

26. Defendant's customers use the Accused Instrumentality as instructed by Defendant and in doing so, complete all elements in at least claims 1 and 9 of the '532 patent making Defendant's customers direct infringers of the '532 patent. Defendant specifically intended for its customers to infringe the '532 patent because Defendant continues to advertise and provide to its customers manuals and product information on their website that when followed necessarily infringe the '532 patent. *See* https://store.leviton.com/products/hotel-key-card-switch-white-wss0s-h0w?variant=18216141635 (Last Accessed August 16, 2019).

27. Defendant instructs its customers, such that when Defendant's customers follow Defendant's instructions, each of said customers necessarily use the Accused Instrumentality in an infringing manner as claimed in the '532 patent making Defendant's customers direct infringers of the '532 patent.

28. Defendant also infringes under 35 U.S.C. §271(c) by contributing to infringement of the '532 patent in the State of Delaware, literally or under the doctrine of equivalents, in this judicial district, and elsewhere in the United States, by, among other things, offering for sale, selling, or importing the Accused Instrumentality, and/or advising, encouraging, and contributing so that others can use the systems claimed by the '532 patent to the injury of Plaintiff.

29. Specifically, pursuant to 35 U.S.C. §271(c), Defendant advertises, sells, and/or provides the Accused Instrumentality to its customers, and instructs its customers, such that when Defendant's customers follow Defendant's instructions, each of said customers necessarily infringe one or more systems claimed in the '532 patent making Defendant's customers direct infringers of the '532 patent.

30. The Accused Instrumentalities which are provided by Defendant to its customers, are designed specifically for use by their customers in an infringing manner as claimed in the

'532 patent. If the functionality that is embodied in the '532 patent were not present in the Accused Instrumentalities sold by Defendant then these said devices would not work properly for their stated purposes by Defendant in its literature about its products when used together for Defendant's stated purpose and in some cases Defendant's installation of the Accused Instrumentalities.

31. There is no substantial non-infringing use for the Accused Instrumentalities because if the devices were used in a non-infringing manner then they would not work for their stated purpose i.e. specific purpose of controlling an unlimited number of LevNet RF Receivers that are in range.

32. Defendant continues advising, encouraging, contributing, and/or otherwise inducing others to use the systems claimed by the '532 patent to the injury of Plaintiff. Since at least the filing date of the Original Complaint, Defendant has had knowledge of the '532 patent, and by continuing the actions described above, has specific intent to induce infringement of the '532 patent pursuant to 35 U.S.C. §271(b), and has further contributed to said infringement of the '532 patent by their customers by providing them with the Accused Instrumentalities so that their customers could directly infringe the '532 patent pursuant to 35 U.S.C. §271(c).

33. Defendant's aforesaid activities have been without authority and/or license from Plaintiff.

34. To the extent 35 U.S.C. §287 is determined to be applicable, Plaintiff is informed and believes its requirements have been satisfied with respect to the '532 patent.

35. Plaintiff is entitled to recover from Defendant the damages sustained by Plaintiff as a result of the Defendant's wrongful acts in an amount subject to proof at trial, which, by law,

cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. §284.

## JURY DEMAND

Plaintiff hereby requests a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## PRAYER FOR RELIEF

Plaintiff respectfully requests that the Court find in its favor and against the Defendant, and that the Court grant Plaintiff the following relief:

A. a judgment that Defendant directly and/or indirectly infringes one or more claims of the '532 patent;

B. award Plaintiff damages in an amount adequate to compensate Plaintiff for Defendant's infringing products' infringement of the claims of the '532 patent, but in no event less than a reasonable royalty, supplemental damages and enhanced damages for any continuing post-verdict infringement until entry of the final judgment with an accounting as needed, under 35 U.S.C. §284;

C. award Plaintiff enhanced damages of three times the amount of the final judgement for Defendant's pre-suit knowledge of the '532 patent and willful infringement of the '532 patent pursuant to 35 U.S.C. §284;

D. a permanent injunction pursuant to 35 U.S.C. §283, enjoining Defendant and their officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from infringement, inducing the infringement of, or contributing to the infringement of the '532 patent, or such other equitable relief the Court determines is warranted;

E. award Plaintiff pre-judgment interest and post-judgment interest on the damages awarded, including pre-judgment interest, pursuant to 35 U.S.C. §284, from the date of each act of infringement of the '532 patent by Defendant to the day a damages judgment is entered, and an award of post-judgment interest, pursuant to 28 U.S.C. §1961, continuing until such judgment is paid, at the maximum rate allowed by law; and an accounting of all damages not presented at trial;

F. a judgment and order finding this to be an exceptional case and requiring defendant to pay the costs of this action (including all disbursements), and attorneys' fees pursuant to 35 U.S.C. §285;

G. award a compulsory future royalty for the '532 patent; and award such further relief as the Court deems just and proper.

| | |
|---|---|
| Dated:  November 9, 2019 | Respectfully submitted, |
| | STAMOULIS & WEINBLATT LLC |
| | */s/Stamatios Stamoulis* |
| | Stamatios Stamoulis #4606 |
| | Richard C. Weinblatt #5080 |
| | 800 N. West Street, Third Floor |
| | Wilmington, DE 19801 |
| | (302) 999-1540 |
| | stamoulis@swdelaw.com |
| | weinblatt@swdelaw.com |
| | Austin Hansley |
| | Texas Bar No.: 24073081 *(Pro Hace Vice)* |
| | **HANSLEY LAW FIRM, PLLC** |
| | 13355 Noel Rd. STE 1100 |
| | Dallas, Texas 75240 |
| | Telephone: (972) 528-9321 Ext. 1000 |
| | Facsimile: (972) 370-3559 |
| | Email: ahansley@hansleyfirm.com |
| | **ATTORNEYS FOR PLAINTIFF ZIG ZAG INNOVATIONS, LLC** |

## CERTIFICATE OF SERVICE

I hereby certify that on November 9, 2019, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, District of Delaware, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

/s/ *Stamatios Stamoulis*
Stamatios Stamoulis